**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CAROL KNOX, | ) | Civil Action No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PPG INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | **JURY TRIAL DEMANDED** |

**PRELIMINARY STATEMENT**

1.      Plaintiff, Carol Knox, files this complaint in order to redress wrongs done to her by her former employer, PPG and her former manager Truman Wilt.  Despite 23 years of service to PPG as a chemical scientist and then a manager, Ms. Knox was wronged when she was fired because she is a woman and because she is over 40 years in age.  Mr. Wilt does not feel comfortable working with women, and prefers younger Caucasian males.  This can be seen in how Mr. Wilt treated Ms. Knox over the 2 years that he was her supervisor. Specifically, Mr. Wilt made comments indicating that he did not feel comfortable working with women.  Also, he disciplined males under his supervision much more leniently than women and he failed to promote Ms. Knox even though her experience, qualifications and performance dictated this.   Likewise, Mr. Wilt failed to promote and hire other women the same as he did men.  Mr. Wilt so disliked Ms. Knox that he actively encouraged her to leave his group and transfer to other divisions and groups at PPG.  When Ms. Knox did not leave the group, Mr. Wilt accused Ms. Knox of sending an anonymous e-mail, with photos attached, to some PPG employees for the alleged purpose of embarrassing a rival employee.  Then, Mr.

1

Wilt conducted a sham investigation and fired Ms. Knox for sending this e-mail. PPG did not intervene, and allowed Mr. Wilt to take this action despite the lack of real evidence and that this type of behavior was uncharacteristic for Ms. Knox. Mr. Wilt has history and pattern of unlawful discrimination against others that were not like him including an employee of Indian heritage that resulted in a lawsuit being filed against PPG. This suit was ultimately settled out of court and Mr. Wilt was promoted. In the end, Ms. Knox comes to this Court to ask for lost wages and other damages permitted for violation of employment discrimination laws including Title VII, ADEA and pendant state law claims.

## COMPLAINT

2. Plaintiff, Carol Knox, by and through her undersigned counsel, alleges the following:

## JURISDICTION AND VENUE

3. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 as amended, for employment discrimination. Jurisdiction is specifically conferred on this Court by 42 U.S.C. §2000e(5).

4. Equitable and other relief are also sought under 42 U.S.C. § 2000e(5)(g). Jurisdiction is also based on 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. §§ 1981 et seq.

5. Jurisdiction is also conferred by 29 U.S.C. §§ 626(c)(1) and appropriate relief is also sought.

6. Venue is proper in accordance with 28 U.S.C. § 1391(b)(2) and (c)(2).

## PARTIES

7. Plaintiff is an adult individual, at all times material, residing in Western Pennsylvania. At all times material, Defendant is a corporation incorporated under the laws

of Pennsylvania having offices in Pittsburgh, Pennsylvania and doing business in Pennsylvania that employs over 501 employees.

## FACTS

8.      At all times material, Plaintiff Carol Knox is a female.

9.      At all times material, Plaintiff is over 40 years old.

10.     Plaintiff earned the following degrees from the identified universities: B.S. Polymer Science, Pennsylvania State University;  M.S. Colloids, Polymer, Surfaces,  Carnegie Mellon University

11.     Plaintiff, Carol Knox began employment with Defendant, PPG in 1990.  Over the years, Plaintiff took positions with PPG of increasing responsibility and complexity.  Ms. Knox worked in the areas of non-halogenated flame retardants; electrochromic eyewear; photochromic eyewear; synthetic paper; and filtration.

12.     Plaintiff was a distinguished employee that included a number of awards including the 2004 PPG Presidential award for the development of a plastic photochromic lens , 11 patents and 4 patent applications.  She was promoted in 1992 to Sr. Chemist and promoted again approximately every 3 years thereafter for 18years.

13.     Plaintiff never had a performance rating below average during her entire career with PPG from 1990 until termination in 2013.

14.     In 2008, PPG had a Research Group consisting of 70-80 people.  The Research Group was responsible for Teslin (a synthetic substrate used in the manufacture of labels and documents) and basic research.  .  In 2008, Ms. Knox was one of five managers that reported to the Director of the Research Group, Peter Foller.   The group included people with a range of education from Bachelor of Science all the way to PhD. Ms. Knox managed 7 to 8 people at any

one time and was responsible for research into optical materials and bringing optical products to market.   Of, the 70-80 employees in the Research Group, only 20% were women in 2008. However, Mr. Foller was actively trying to increase this percentage through new hires and transfers.  Ms. Knox was the only female manager in the Research Group at this time.

15.     In 2008, Plaintiff was named to the position of Project Manager and a designated level of Senior Research Associate.   Plaintiff's responsibilities included managing 8 people including JD (the person's actual name has been changed to protect their identity) (Teslin, R/D manager), Bob Swisher (Sr. Research Associate), Yingchao Zhang (Research Associate), DD (the person's actual name has been changed to protect their identity) (Project Engineer), Luke Parinello (Sr. Research Associate), Larry Lipko (Sr. Technician), Beth Moser (contractor), and Sandy Hoffman (contractor).

16.     In 2010, Mr. Truman Wilt replaced Mr. Foller and became the Director of Research and Plaintiff reported to Mr. Wilt.  During her first meeting with Mr. Wilt, he started the conversation by asking Plaintiff's age.  Plaintiff made a joke in order to diffuse the tension although Plaintiff thought it was inappropriate.  Mr. Wilt kept insisting that Plaintiff tell him her age and he kept guessing at her age.  Plaintiff just ignored the question and changed the subject.

17.     In this same meeting, Mr. Truman stated that he felt uncomfortable around women and women were better suited in business rather than R and D.  He stated that Plaintiff should obtain another position by transferring in the company to a non-managerial position. These statements startled Plaintiff because it was an introductory meeting and not a performance review.  These comments set the stage for how Mr. Wilt would treat Plaintiff over the next years.

18.     From 2010 until 2013, Mr. Wilt never complimented or praised Plaintiff's work at PPG despite that fact that the Plaintiff was running one of the top 6 projects in the company and

recognized by the CTO, Chuck Kahle, in an open forum.  Plaintiff grew the Teslin Project (i.e. a project involving the development of a new chemical paper product) significantly and was recognized by the business manager.

19.    Mr. Wilt treated Plaintiff differently than male counterparts in that he would assign Plaintiff administrative teams (e.g. United Way, cross group committee) and her male counterparts were assigned on technical teams (mega trends, new technology, etc.). Due to the fact that an employee was reviewed partially based upon technical achievements, this treatment had a negative impact on Plaintiff's career track at PPG.

20.    Mr. Wilt often commented that it was better for women to work on the business side of PPG and not the technical side, which Plaintiff took to mean that women were not suited for scientific work.

**Mr. Wilt's Failure to Promote Plaintiff**

21.    In each of the years 2011, 2012 and 2013, Plaintiff requested that Mr. Wilt give her a promotion.  Plaintiff was qualified for promotion, however, Mr. Wilt refused to recommend her for promotion.  Typically at PPG, an employee has to perform a job at a new level for a year prior to getting promoted.  The Plaintiff performed the job level for five (5) years and was not even considered for a promotion.  Prior to being supervised by Mr. Wilt, the Plaintiff historically received promotion every 3-5years and was never rejected after applying for a promotion.

22.    Plaintiff's qualifications for promotion included the fact that she was doing the same job (e.g. R/D manager for business unit) as her male counterpart employees that were a level above her.  Mr. Wilt stated that she could not be promoted based on the size of her business unit (i.e. it did not earn enough money to justify the cost of a promotion) and not her performance.  Also, Mr. Wilt stated that there was nothing the Plaintiff could do to get promoted.

Plaintiff believes that Mr. Wilt's reasons for not promoting Plaintiff were pretext and that the real reason was that she was a woman and/or over 40 years old.

23.     In 2011, Mr. Wilt transferred a male employee (Brian Rearick) into the Plaintiff's group that was a level higher than the Plaintiff despite Mr. Wilt's claim that the group could not support someone at this level.  This male employee left the group in 2012 to pursue a supervisor position and Mr. Wilt transferred another male employee (Peter Drzal) into his group and then pressured Plaintiff to promote this employee to a level above Plaintiff.  This proposed promotion was unusual in that it was against PPG practice to require a transferred employee to prove they could handle the job through good work performance for at least 1 year before they were promoted.

24.     Plaintiff and Rafael Kollah, Director Silica (i.e. a manager), protested this attempt at promotion of Mr. Drzal to Mr. Wilt and Human Resources because the employee did not meet Defendant's requirements for the position (i.e. was not qualified).  Ultimately, Plaintiff refused to promote Mr. Drzal and Mr. Wilt became irate.

25.     During the years that Mr. Wilt was Plaintiff's supervisor he kept encouraging Plaintiff to transfer to another division.  He stated that this is the only way to get promoted and that is would be good for her career.  One instance when this occurred involved a job opening at another group.

26.     In June of 2013, Mr. Yu offered Plaintiff a position in his group (i.e. another group at PPG). Mr.  Wilt highly encouraged Plaintiff to take the position.  Plaintiff was uncertain of the position and so she spoke to Chuck Kahle, Director of R&D and Mr. Wilt's boss about whether this move would be good for her career.  Mr. Kahle informed Plaintiff that the move was a bad idea because the position was a "dead end" and recommended that she stay where she

was and complete the high profile project she was working on.  Mr. Wilt found out about this conversation and became irate with Plaintiff and became physically menacing to Plaintiff.

27.     In June of 2013, Mr. Wilt informed Plaintiff that she should transfer out of the group because the group was moving to Ohio and she would have to sell her house that she had just built.  Plaintiff was surprised by this alleged move and after inquiries, determined that no such move was planned (e.g. Plaintiff spoke to Mike Callahan, Director of Business Operations).

**Plaintiff Reports Mr. Wilt's Failure to Promote Her To Human Resources**

28.     In 2012, Plaintiff met with the Director of Human Resources  Monroeville, Allan Foss (i.e. the HR director that was responsible for the Teslin Group) and explained her concerns that Mr. Wilt was unfairly denying her requests for promotion and the fact that Mr. Wilt was actively encouraging Plaintiff to transfer to another division.  Mr. Foss stated that the size of business does not have anything to do with limitation on level and even emphasized how Mr. Wilt brought into the group, male employees (e.g. Brian Rearick) at a higher level than the Plaintiff.

29.     Mr. Foss stated that Mr. Wilt wanted to promote Peter Drzal to a higher level and that if the Plaintiff left her current position at PPG, Mr. Wilt would bring in Peter Drzal into her job at a higher level (including higher pay).  During this meeting Plaintiff expressed her concern that Mr. Wilt would retaliate against her if Plaintiff openly declared her opinion that he was discriminating against Plaintiff.  Mr. Foss stated that he would talk to Mr. Wilt.  However, to Plaintiff's knowledge, Mr. Foss did take any action to address Plaintiff's concerns.

**Mr. Wilt Fails to Hire and Promote Women**

30.     From 2011 until Plaintiff left employment with PPG in 2013, Mr. Wilt failed to hire and promote women and actively sought to remove the existing female employees that he supervised.

31.     At all times material, Mr. Wilt mostly recognized white males as high potential even when females out performed them.   This is in sharp contrast to his predecessor, Peter Foller.   An example of this is in 2012 when Plaintiff recommended that a female employee (Qunhui Guo) be given an exceptional rating. Mr. Wilt rejected this recommendation and gave an inexperienced white male, Justin Martin, an exceptional rating despite Mr. Martin having less experience and time at PPG than Mrs. Guo.

**Plaintiff Reports Mr. Wilt's Failure to Hire and Promote Women**

32.     In 2011, Plaintiff met with the Director of Human Resources for Monroeville, John Coyne and informed him that Mr. Wilt was not promoting women.  Mr. Coyne stated that it is the Plaintiff's job to keep pushing for women and no further action was taken.

33.     In 2012 Plaintiff met with the Director of Human Resources for the Monroeville, Allan Foss and explained her concerns that Mr. Wilt was not promoting women.  Mr. Foss stated that it is up to Mr. Wilt to decide who he wants to promote and no further action was taken.

**Age Discrimination By Mr. Wilt**

34.     A review of Mr. Wilt's promotions from 2010 to 2013 shows that Mr. Wilt promoted young males over women and older men, and males over older women.

35.     Mr. Wilt made a number of comments that highlighted his bias against older employees.  Specifically, he repeatedly asked Plaintiff in 2012 how old JD (JD was over 40 years old at the time) was and when he was going to retire.  He repeatedly stated that JD should just retire.

36.     In 2012, Mr. Parinello was an employed by Defendant and was over 40 years old at the time.

37.     In 2012, Mr. Wilt repeatedly asked Plaintiff how old Luke Parinello was and when he was going to retire.  Plaintiff stated that she did not know how old he was as it did not matter.  Mr. Wilt kept insisting that she guess his age and if he was going to retire.  Plaintiff had this conversation several time throughout the years.

**Retaliation and Plaintiff's Termination by Mr. Wilt**

38.     In 2008, Diane Kappas, Business Manager, Teslin and Peter Foller (Plaintiff's supervisor at the time) approached Plaintiff and directed her to investigate two employees.  The investigation was required to address an alleged inappropriate relationship between a married employee JD and another non-married employee DD.  She was told that this alleged affair was disrupting employee group cohesion and was potentially affecting the performance of the group.

39.     At some point, Plaintiff was pressured by Mr. Wilt to fire DD and keep JD. Despite this pressure, Plaintiff kept DD and transferred JD to another group.  At this time, Plaintiff felt it was unfair to treat the woman employee different from the male employee (i.e. unfairly discriminate against a female employee).

40.     During her investigation, Plaintiff obtained evidence that the two employees were spending a lot of time together and acting flirtatious.  Apparently, DD was not pleased with the investigation and complained to HR that Plaintiff was harassing her.  These complaints were later determined to be unfounded by Joel Smith in HR on July, 2012.  Mr. Wilt and Mr. Foss stated the DD was harassing Plaintiff due to her constant complaining.

41.     On January 28, 2013, DD resigned from employment with PPG.

42.     On or about July 23, 2013 Plaintiff received an e-mail from jimmyboyppg@yahoo.com.  The e-mail contained a number of photographs of JD and DD. These photographs mostly showed these two people together posing as a couple but there was no nudity or offensive poses.  In accordance with PPG policies, Plaintiff forwarded the e-mail the Human Relations department and her supervisor Truman Wilt.

43.     On July 29, 2013, upon Plaintiff's return from vacation, she was confronted by a Human Relations representative, Alan Foss and accused of being deceptive and attempting to discredit a current employee, namely JD.

44.     Based upon discussion with Alan Foss, the basis for this accusation appears to be that Plaintiff sent the July 23, 2013 e-mail to coworkers in Plaintiff's group in an effort to make JD look bad.  Further, Plaintiff was accused of allegedly saving an email dated January 29, 2013 on her computer that allegedly contained similar pictures to those attached to the July 23, 2013 e-mail.

45.     On July 29, 2013, The Plaintiff was never shown the alleged pictures and very briefly shown the July 23, 2013 e-mail. However, despite Plaintiff's requests, Mr. Foss provided no evidence that Plaintiff sent the July 23, 2013 email.  In fact, he admitted that he did not have any evidence that Plaintiff sent the e-mail.  In addition, Ms. Knox stated that she had not worked on July 23, 2013 but was on vacation.  She stated that she had no ability to send the e-mail and was not familiar with the e-mail address that the e-mail was allegedly sent from.

46.     On July 29, 2013, Mr. Foss asked Plaintiff to explain how the January 29, 2013 e-mail was in her computer (saved in an Outlook folder).  Plaintiff explained that she was not at the office on January 29, 2013 and was unfamiliar with the e-mail address of the e-mail.   When Plaintiff could not explain the presence of the January 29, 2013 e-mail she was told that she was

terminated from employment with Defendant.  Plaintiff asked for evidence and/or reasoning by Defendant that Plaintiff authored either e-mail with the photographs but was only told that the matter was under investigation.

47.     On August 8, 2013, Plaintiff filled out a form titled "Corporate Facilitation Request" form as part of Step 2 of the Resolve/PPG Employee Dispute Resolution Process. In the form she described that she was terminated based upon false allegations and that she was not given the opportunity to investigate or dispute the allegations.  Finally, in the form she requested that she be reinstated.  The form was submitted to PPG.

48.     In a letter dated November 8, 2013, Defendant's employee, Cassandra Tembo, with the title of Resolve Facilitator, responded to the August 8, 2013 form submitted by Plaintiff. In this letter, Ms. Tembo claimed that Defendant had completed a thorough review of the work related dispute (i.e. Plaintiff's termination); that an investigation had been conducted by the Facilitator; and that this investigation involved an interview of the Plaintiff on July 29, 2013, nine managers or associates and a review of the e-mail and other documents.

49.     During the investigation, Plaintiff denied recalling that she looked at the January 29, 2013 e-mail and the photo attachments and questioned where the January 29th e-mail came from in the first place.  Some of the attached pictures were clearly taken by JD as selfies and Plaintiff had no way to get these photos.  During the investigation, Ms. Tembo stated that Plaintiff must have gotten the pictures from the January 29th 2013 e-mail from DD's computer or an internal server (despite the fact that Plaintiff had no access to the photos because these photos were placed there in February 2013, after the e-mail was sent).  Plaintiff stated that this was impossible and a simple investigation would prove this.  Further, Plaintiff stated that Mr. Foss was the last person to have possession of DD's computer and that she should talk to Mr. Foss to

check the computer.  Plaintiff requested that this be investigated but to her knowledge this was never done.

50.     Ms. Tembo stated in the November 11, 2013 letter that after her investigation, she made four findings summarized as follows:

a.      Plaintiff was terminated because it found Plaintiff had sent the July 23, 2013 e-mail to herself and others.

b.      This conclusion was primarily based upon the fact that there was an e-mail dated January 29, 2013 in her outlook file that "closely resembled" the July 23, 2013 e-mail and PPG did not believe Plaintiff's denial of the knowledge of the e-mail.

c.      Inconsistent statements by Plaintiff about her knowledge of the January 29, 2013 e-mail and actions around her placing the e-mail in a folder.

d.      Ms. Tembo could find no facts that PPG did not reasonably believe that Plaintiff was responsible for sending the July 23, 2013 e-mail.

51.     Ms. Tembo stated in the letter that PPG had found no reason to change its decision to terminate Plaintiff.

**PPG Violates Its Ethics Pamphlet**

52.     At all times material, Defendant provided to Plaintiff a pamphlet titled "Leadership Through Integrity: PPG Industries Global Code of Ethics: A Guide to Corporate Conduct" (hereafter referred to as "the Ethics Pamphlet").

53.     The Ethics Pamphlet indicates that it is designed to guide employee conduct on ethics issues faced by employees.  Specifically, it indicates that "false reporting of employee misconduct is unacceptable and may be illegal."  Also, that Human Resources personal are available to help employees.  Defendant violated this portion of the pamphlet when either Mr.

Foss or Mr. Wilt falsely reported that Plaintiff had sent an email to employees with photographs on July 23, 2013 in an effort to discredit another employee and then fired Plaintiff under false pretenses.

54.     The Ethics Pamphlet indicates in a section titled "Responsibility to PPG Employees" that Defendant has certain duties to its employees which include mutual respect and reciprocal trust.  Also, a section indications that effective and candid two-way communication is important and that every employee has a right to information related to their performance. Defendant violated this portion of the pamphlet when it would not discuss the allegations for termination and disrespected the Plaintiff by making false accusations and not conducting a thorough investigation prior to termination.

55.     The Ethics Pamphlet indicates that PPG will promote diversity and "will not discriminate against individuals on the basis of any status protected by law."  Defendant violated this portion of the pamphlet when Mr. Wilt failed to hire and promote women in the section managed by Mr. Wilt.

56.     The ethics pamphlet indicates that PPG will not tolerate harassment of any PPG employee by management or others and that PPG will promptly and thoroughly investigate any complaints of harassment.  Further, it indicates that it will take appropriate disciplinary action against an employee found to be harassing another employee and will not tolerate retaliation. Defendant violated this portion of the pamphlet when it failed to fully and properly investigate Mr. Wilt's claim that Plaintiff sent the July 23, 2013 email.

**PPG Violates Its Issue Resolution Procedure Known as "Resolve"**

57.     At all times material, Defendant followed a procedure, that applied to Plaintiff, to resolve issues between employees and PPG known as "Resolve".

58.     The Resolve process involves a three step process as follows:

a.      First Step:  Employee discusses issue with immediate supervisor and gather facts and attempt to resolve issue;

b.      Second Step: If step one does not resolve the issue, then the employee can meet with the Associate Director/Department Head.

c.      Third Step: If step two does not resolve the issue, then the employee can meet Facility Director.

59.     In addition to having a right to these steps, The Resolve process provides that if when an employee is terminated, then the employee can file a request to meet with the Vice President of Coatings R&D.

60.     With respect to Plaintiff, Defendant violated the Resolve process as follows:

61.     PPG failed to gather sufficient facts to determine the source of the alleged July 23, 2013 e-mail.  A proper investigation would require a computer forensics person or a person with similar training/experience to track the source of the e-mail.  This was not done.  Mr. Wilt and Human Resources were unresponsive to her efforts to assist in gathering facts to resolve the issue.  Instead, Defendant made accusations that were unsupported and with no foundation that Plaintiff sent this e-mail.

62.     Plaintiff was not permitted to discuss the issues with her supervisor, Mr. Wilt.

63.     Mr. Wilt made no attempt to resolve the issues but fired her.  There were no discussions regarding discipline less than termination despite Plaintiff's many years of service and loyalty to PPG.

64.     Defendant permitted Mr. Wilt to be involved with the investigation despite the fact that he had a long history of conflict with Plaintiff; that he was not promoting Plaintiff; and had shown that he was trying to have Plaintiff moved out of his group.

**Male Employees Are Investigated and Disciplined Differently than Plaintiff**

65.     From 2008 to 2012, Plaintiff investigated a male employee, JD with respect to having an affair with a fellow employee that JD supervised as described earlier in this complaint. This investigation went on for years and JD was given many opportunities to participate in the investigation.  In contrast, when Plaintiff was investigated with respect to her involvement with the July 23, 2013 e-mail, the investigation was short (she was terminated 6 days later on July, 29, 2013) and she was given little opportunity to be involved with the investigation.

66.     On July 23, 2013, JD, a fellow PPG employee, was investigated by Human Resources regarding the July 23, 2013 e-mail.  At that time, JD held a position with a job title of Technical Service, Teslin.  This employee was over 50 years old and a white male.  JD took the pictures that were found on Plaintiff's computer.  A Human Resources employee, Alan Foss, spoke with JD but, unlike Plaintiff, no disciplinary action was taken against him.  Further, Defendant kept JD employed while he was investigated for having an affair and while the source of the July 23, 2013 e-mail was investigated but Plaintiff was terminated.  This is clearly impermissible discrimination.

67.     In 2010, PPG employee, Anil Kumar was charged with sexually harassing an employee that reported to him.  Mr. Kumar was similarly situated to Plaintiff in that he reported directly to the Director.  He was disciplined but not fired.  Instead, Mr. Wilt promoted Mr. Kumar approximately one year later and Mr. Wilt stated that Mr. Kumar went through a lot and deserved a promotion.

68.     Unlike these male employees, after Plaintiff was accused by Mr. Wilt, with sending the July 23, 2013, e-mail she was fired.   She was fired immediately without any investigation of who sent the email.  Mr. Wilt did not support the Plaintiff as a supervisor like he had other male employees.  He did not get the facts on the subject and discuss them with the Plaintiff to hear her side of the story, like he had done with male employees.

**Plaintiff Was Paid Approximately 20% Less Than Similarly Situated Males**

69.     From 2008 to 2013, Plaintiff was a Senior Research Associate level and Project Manager that supervised 8-10 employees.   During this same period there were four other male managers with similar responsibilities and duties (i.e. similar management positions) but in some cases had less experience.   All of these male managers earned approximately 20% more than Plaintiff.

70.     Defendant had no legitimate business reasons for paying Plaintiff less than her male counterparts.

71.      As a result of Defendant's discrimination, Plaintiff suffered a significant loss in wages and bonuses for 5 years.  In addition, Plaintiff also lost significant pension and retirement benefits because of the reduced pay compared to her male counterparts.

**Pattern and Practice of Discrimination**

72.     PPG had a practice of employment discrimination while Plaintiff was employed by PPG as can be seen by treatment of other employees.

73.     In 2008, PPG was named as a Defendant in an employment discrimination lawsuit filed in the U.S. District Court in the Western District of Pennsylvania at 08-00717-DSC by a former employee Amarendra Mishra.  Mr. Mishra, was hired by PPG in 1990 and had a Ph.D. in materials science.  However, despite years of outstanding performance he was not promoted by

PPG or Mr. Wilt.  Ultimately, Mr. Mishra resigned from PPG and classified the resignation as a constructive discharge due to ongoing harassment by Mr. Wilt and other management at PPG. He was replaced by a younger Caucasian male, Peter Drzal (Note: In Mr. Mishra's complaint his name is spelled "Drazal").

74.     In Mr. Mishra's federal complaint, Mr. Mishra alleged that he was of Indian race and national origin and that PPG impermissibly discriminated against him when it failed to promote him because he was Indian (i.e. PPG discriminated against him in violation of Title VII of the Civil Rights Act and other laws.).  Also, Mishra alleged that he was over 40 years old and was discriminated against because other younger white males were promoted before him in violation of ADEA.  This suit was filed as a class action lawsuit on behalf of similarly situated PPG employees of Indian descent.

75.     Ultimately, PPG and Mr. Mishra reached a settlement and the complaint was dismissed by court order on December 10, 2012.  Despite the fact that PPG was forced to settle the case and Mr. Wilt was identified in the complaint as the person causing the discrimination, Mr. Wilt was promoted to a director position in 2010 with >100 people reporting to him.  Mr. Wilt often joked about Mr. Mishra's lawsuit stating that PPG did not really care about discrimination since the lawsuit did not negatively affect his career and he was even promoted.

76.     As in this case, Mr. Wilt was at the center of the discrimination charges.  It is striking that PPG's and Mr. Wilt's behaviors are similar in both cases.  Specifically:

a.      Both Mr. Mishra and Plaintiff worked in technical areas of PPG;

b.      Both were members of a protected class;

c.      Both were not promoted after Mr. Wilt became their superior;

d.      Both suffered harassment when Mr. Wilt became their supervisor;

17

e.      Both were replaced by Peter Drzal;

f.      Both observed that women and non-Caucasians were not on the list of High Potential employees;

g.      Both were encouraged by Mr. Wilt to quit their position or transfer to another position; and

h.      Both were discharged from employment by PPG.

77.     On or about, December 9, 2013, Plaintiff filed a charge with the EEOC. In the Charge she identified the following claims:

78.     Unlawful discrimination by Defendant against Plaintiff because of her gender in violation of the Civil Rights Act, Title VII.  This included retaliation, creating a hostile work environment and having pattern, practice and policies that constituted disparate treatment and had a disparate impact on Plaintiff that constitute willful violations of the Act.

79.     Unlawful discrimination by Defendant against Plaintiff because of her age in violation of the Age Discrimination in Employment Act (ADEA). This included retaliation, creating a hostile work environment and having pattern, practice and policies that constituted disparate treatment and had a disparate impact on Plaintiff that constitute willful violations of the Act.

80.     That the discrimination was based upon, many factors, including Defendant's failure to promote Plaintiff; failure to maintain a non-hostile work environment; failure to properly investigate claims made against her; improperly terminating her on July 29, 2013; failure to follow internal procedures concerning ethics and conflict resolution; and failure to reinstated Plaintiff on November 8, 2013.

81.     In a letter dated April 7, 2014, Defendant filed a response to the charge with the EEOC.  In the response Defendant insinuated that Plaintiff had a motive to send the July 23, 2013 e-mail (i.e. to discredit a fellow employee JD) due to the fact that Plaintiff had investigated alleged inappropriate relationship between JD and DD and that this caused a conflict between JD and Plaintiff.  Also, in the letter Defendant, among other things, denied it discriminated against Plaintiff.

82.     On or about, April 23, 2015, Plaintiff filed an amended charge. The amended charge included claims that PPG discriminated against Plaintiff based upon wages because she was a woman.

83.     Plaintiff received a right to sue letter from the EEOC on August 13, 2015.

**Count I**
**Sex Based Discrimination (Disparate Treatment Discrimination) In Violation of Title VII**
**of the Civil Rights Act of 1964, 42 U.S.C. § § 2000e et. seq.**

84.     At all times material, Plaintiff was and is a member of a protected class as defined by 42 U.S.C. § § 2000e et. seq. because she is female.

85.     At all times material, Plaintiff was qualified for her position. Plaintiff suffered adverse an employment action in that she was terminated from her position on July 29, 2013 with PPG as a Senior Research Associate and Supervisor because she is female.  Defendant's decision to terminate Plaintiff was intentional or was a motivating factor based upon Plaintiff's gender.

86.     Plaintiff was replaced from her position at PPG by a male employee.

87.     As a result of PPG's discrimination as described above, Plaintiff suffered the damages identified in paragraph 99 of this complaint.

88.     At all times material, Plaintiff suffered ongoing adverse employment actions in that she was paid less than male counterparts because she is a female.

89.     Defendant's decision to pay Plaintiff less than similarly situated males was intentional or was a motivating factor based upon Plaintiff's gender.

90.     As a result of PPG's discrimination as described above, Plaintiff suffered the damages identified in paragraph 99 of this complaint.

91.     Plaintiff suffered an adverse employment action in that Defendant failed to promote her because she was female.  In contrast Defendant, through its employee Truman Wilt, promoted other male employees in the same work group as Plaintiff despite the fact they did not have as much experience and were less qualified than Plaintiff.

92.     Defendant's failure to promote Plaintiff was intentional or was a motivating factor based upon Plaintiff's gender. The discrimination was with malice or with reckless indifference to Plaintiff's rights.

93.     As a result of PPG's discrimination as described above, Plaintiff suffered the damages identified in paragraph 99 of this complaint.

WHEREFORE, Plaintiff prays that this Honorable Court award her compensation for the damages outlined herein including front pay, back pay, attorney's fees and costs, lost benefits, damages for emotional distress and punitive damages and injunctive relief  as well as any other remedies and relief as this Court deems just.

**Count II**
**Sex Based Discrimination (Disparate Impact Discrimination) In Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § § 2000e et. seq.**

94.     Plaintiff incorporates the above paragraphs as if the same were set forth herein.

95.     At all times material, Plaintiff was a member of a protected class, i.e. female.

96.     Defendant maintained policies, patterns, practices or omissions that adversely impacted females, including Plaintiff, and caused them to be paid less than their male counterparts.  Defendant had no legitimate business reason to maintain the subject policies, practices etc.

97.     The subject policies, patterns, practices or omissions included failing to promote females and failing to give them performance review ratings that were as high as similarly situated males.

98.     The adverse impact caused Plaintiff the damages identified paragraph 99.

WHEREFORE, Plaintiff prays that this Honorable Court award her compensation for the damages outlined herein including front pay, back pay, attorney's fees and costs, lost benefits, damages for emotional distress, punitive damages and injunctive relief  as well as any other remedies and relief as this Court deems just.

**Damages**

99.     As a result of impermissible discrimination by Defendant in violation of Title VII and the PHRA as described herein, Plaintiff suffered injury and requests the following damages as allowed by that statute and case law to make her whole:

a.      Back Pay including lost or reduced retirement benefits,

b.      Front Pay including lost or reduced retirement benefits,

c.      Compensatory Damages for emotional distress, pain and suffering.

d.      Punitive damages,

e.      Attorney's fees and costs; and

f.      Any other damages or remedies permitted by law and that this court sees fit to award.

**Count III**

**Age Based Discrimination (Disparate Treatment) In Violation of the Age Discrimination in Employment Act of 1967, (ADEA), 29 U.S.C. §§ 621-634**

100.    Plaintiff incorporates the above paragraphs as if the same were set forth herein.

101.    At all times material, Plaintiff was and is a member of a protected class as defined by 42 U.S.C. § § 2000e et. seq. because she is over the age of 40 years old.

102.    At all times material, Plaintiff was qualified for her position. Plaintiff suffered adverse an employment action in that she was terminated from her position on July 29, 2013 with PPG as a Senior Research Associate and Supervisor because she is over age 40 years old. Defendant's decision to terminate Plaintiff was intentional or was a motivating factor based upon Plaintiff's age.

103.    Plaintiff was replaced from her position at PPG by a younger male employee.

104.    As a result of PPG's discrimination as described above, Plaintiff suffered the damages identified in paragraph 99 of this complaint.

105.    At all times material, Plaintiff suffered ongoing adverse employment actions in that she was paid less than younger counterparts because she is over the age of 40 years old.

106.    Defendant's decision to pay Plaintiff less than similarly situated younger employees was intentional or was a motivating factor based upon Plaintiff's age.

107.    As a result of PPG's discrimination as described above, Plaintiff suffered the damages identified in paragraph 99 of this complaint.

108.    Plaintiff suffered an adverse employment action in that Defendant failed to promote her because she was over the age of 40 years old.  In contrast Defendant, through its employee Truman Wilt, promoted other younger employees in the same work group as Plaintiff despite the fact they did not have as much experience and were less qualified than Plaintiff.

109.     Defendant's failure to promote Plaintiff was intentional or was a motivating factor based upon Plaintiff's age. The discrimination was with malice or with reckless indifference to Plaintiff's rights.

110.     As a result of PPG's discrimination as described above, Plaintiff suffered the damages identified in paragraph 99 of this complaint.

WHEREFORE, Plaintiff prays that this Honorable Court award her compensation for the damages outlined herein including front pay, back pay, attorney's fees and costs, lost benefits, damages for emotional distress, punitive damages and injunctive relief  as well as any other remedies and relief as this Court deems just

**Count IV**
**Age Based Discrimination (Disparate Impact) In Violation of the Age Discrimination in Employment Act of 1967, (ADEA), 29 U.S.C. §§ 621-634**

111.     Plaintiff incorporates all of the above paragraphs as if the same were set forth herein.

112.     At all times material, Plaintiff was a member of a protected class, i.e. over the age of 40 years old.

113.     Defendant maintained policies, patterns, practices or omissions that adversely impacted people over the age of 40 years old, including Plaintiff, and caused them to be paid less than their younger counterparts (i.e. under the age of 40 years old).  Defendant had no legitimate business reason to maintain the subject policies, practices etc.

114.     The subject policies, patterns, practices or omissions included failing to promote individuals over the age of 40 years old and failing to give them performance review ratings that were as high as similarly situated people under the age of 40 years old.

115.    Plaintiff's age was a motivating factor in his termination, failure to promote and failure to pay her wages comparable to other male employees.

116.    The adverse impact caused Plaintiff the damages identified paragraph 99.

WHEREFORE, Plaintiff prays that this Honorable Court award her compensation for the damages outlined herein including front pay, back pay, attorney's fees and costs, lost benefits, damages for emotional distress, punitive damages and injunctive relief  as well as any other remedies and relief as this Court deems just.

**Count V**
**Sex and Age Discrimination in Violation of the Pennsylvania Human Relations**
**Act 43 P.S. §§ 951-963**

117.    Plaintiff incorporates the above paragraphs as if the same were set forth herein.

118.    Plaintiff is a person as defined by Section 4 of the Pennsylvania Human Relations Act (PHRA).  Defendant is an employer as defined by Section 4 of the PHRA.

119.     Defendant violated Section 5(a) of the PHRA when it discriminated against Plaintiff because of her gender and age as described herein.

120.    As a result of the discrimination described herein, Plaintiff suffered the damages listed in paragraph 99 of this complaint.

WHEREFORE, Plaintiff prays that this Honorable Court award her compensation for the damages outlined herein including front pay, back pay, attorney's fees and costs, lost benefits, damages for emotional distress, punitive damages and injunctive relief  as well as any other remedies and relief as this Court deems just.

Dated **11/2/2015**

Respectfully Submitted,

Delta Law GRP, LLC

_____
Brian D. Walters, Esquire
PA ID # 79803

301 Grant Street, Suite 4300
Pittsburgh, PA 15219
Phone 412-349-0940
Fax 412-945-5119
Email bdw@deltalawgrp.com

*Counsel for Plaintiff, Carol Knox*