# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | ) | |
|---|---|---|
| CAROL KNOX, | ) | |
|       Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:15-cv-1434 |
| | ) | |
| PPG INDUSTRIES, INC., | ) | |
|       Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

This is an employment discrimination case, alleging age and gender discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*; Age Discrimination and Employment Act, 29 U.S.C. §§ 621-634; and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951-63. Pending before the Court is DEFENDANT'S MOTION TO DISMISS (ECF No. 11), along with a brief in support (ECF No. 12), filed by PPG Industries, Inc. Plaintiff, Carol Knox, filed a BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS (ECF No. 14), and PPG filed a reply brief (ECF No. 15). Accordingly, the motion is ripe for disposition.

**I.    Background**

    **A.    Factual Background[1]**

Plaintiff is a woman who is over forty years old. She began working for PPG in 1990, was promoted to Senior Chemist in 1992, and received what she describes as a "promotion" approximately every three years for the next 18 years, until her termination in 2013. During her tenure at PPG, she never had a performance rating below average and was a distinguished

---

[1]    The complaint contains numerous additional allegations related to Plaintiff's termination and, more specifically, the investigation (or alleged lack of investigation) surrounding it. Plaintiff also takes PPG to task for failing to adhere to its "Resolve" program and its Ethics Pamphlet and describes several purported comparators, who engaged in conduct that was allegedly similar to that which Plaintiff is alleged to have engaged but for which they were not terminated. Since PPG has not sought to dismiss Plaintiff's disparate-treatment claims insofar as they relate to her termination, the Court will not describe these additional allegations at length.

employee, having received numerous awards over the years.

In 2008, Plaintiff was assigned to the position of "Project Manager" in the Teslin Research Group and designated to the level of "Senior Research Associate." The Research Group, which consisted of 70 to 80 people (of whom 20 percent were women), included four other managers, each of whom reported to Peter Foller. Plaintiff was the only female manager.

In 2010, Truman Wilt replaced Foller as Director of Research for the Teslin Group, and Plaintiff began reporting to Wilt. During their first meeting, Wilt allegedly asked Plaintiff her age. When Plaintiff attempted to make a joke to diffuse the tension, Wilt persisted and kept guessing at Plaintiff's age. During that same meeting, Wilt said that he felt uncomfortable around women, whom he thought "were better suited in business rather than R and D." Compl. ¶ 17. Wilt also allegedly told Plaintiff that she should consider transferring to a non-managerial position within the company.

According to Plaintiff, this meeting was only a harbinger of things to come. Over the next three years, Plaintiff claims that Wilt never complimented or praised her work, even though she was leading one of PPG's top six projects, and gave her less favorable assignments than her male counterparts. He also often commented that women should work on the business side of PPG and rather than the technical side. In addition, Wilt allegedly assigned Plaintiff "administrative teams," while assigning her male counterparts "technical teams." Because PPG employees were reviewed, in part, based on their technical achievements, this decision negatively impacted Plaintiff's career track.

On unspecified dates in 2011, 2012, and 2013, Plaintiff requested that Wilt give her what she describes as a "promotion," but Wilt refused. According to Plaintiff, PPG employees typically must "perform a job at a new level for a year prior to getting promoted." *Id.* ¶ 21.

Plaintiff alleges, however, that she "performed the job level for five (5) years and was not even considered for a promotion," even though she had historically received a promotion every three to five years and had never before been rejected for one. *Id.* "Plaintiff's qualifications for promotion included the fact that she was doing the same job (e.g. R/D manager for business unit) as her male counterpart employees that were a level above her." *Id.* ¶ 22. Wilt allegedly informed Plaintiff that she could not be promoted because her business unit did not earn enough money to justify the costs of paying Plaintiff more than she had been making. Nevertheless, in 2011, Wilt transferred a male employee named Brian Rearick, who was at the level above Plaintiff, into Plaintiff's working group, seemingly belying his earlier claim that the group could not support someone getting paid at that level. After Rearick left the group in 2012, Wilt transferred another male employee, Peter Drzal, into Plaintiff's group and then pressured Plaintiff to promote him. Wilt allegedly became irate whenever Plaintiff refused to do so.

Meanwhile, during the years he was Plaintiff's supervisor, Wilt often encouraged her to transfer to another division, saying this would be the only way she could get promoted and that it would be good for her career. In June 2013, Plaintiff was offered a position in another group within PPG, which Wilt "highly encouraged" her to take. *Id.* ¶ 22. Eventually, however, she learned from Chuck Kahle, the Director of R&D (and Wilt's boss) that the move would actually be a "dead end" for her career. Also that month, Wilt advised Plaintiff to transfer out of the group because the group was moving to Ohio, so Plaintiff would have to sell her newly built home in Pennsylvania. Plaintiff later learned, however, that no such move was really planned.

Sometime in 2012, Plaintiff met with Allan Foss, the Human Resources Director for the Teslin Group, and complained that Wilt had unfairly denied her requests for "promotions." She also complained about Wilt's attempts to get her to transfer to another division. Foss explained to

3

Plaintiff that, contrary to what Wilt had told her, "the size of business does not have anything to do with limitation on level[.]" *Id.* ¶ 28. According to Plaintiff, Foss "even emphasized" how Wilt brought Brian Rearick into the group at a higher level than Plaintiff. *Id.* Moreover, Foss explained that if Plaintiff left her position with PPG, Wilt planned to transfer Peter Drzal to her old position "at a higher level (including higher pay)." *Id.*

Aside from Wilt's treatment of her, Plaintiff claims that Wilt "failed to hire and promote women and actively sought to remove the existing female employees that he supervised." *Id.* ¶ 30. An example of this occurred in 2012, "when Plaintiff recommended that a female employee (Qunhui Guo) be given an exceptional rating" and "Wilt rejected this recommendation and gave an inexperienced white male, Justin Martin, an exceptional rating despite Mr. Martin having less experience and time at PPG than Mrs. Guo." *Id.* ¶ 31.

Similarly, Plaintiff alleges that Wilt "promoted young males over women and older men, and males over older women" *Id.* ¶ 34. According to Plaintiff, Wilt also made comments that reflected his bias against older workers. For example, in 2012, he repeatedly asked Plaintiff how old an employee named JD was and when he planned to retire. Wilt asked Plaintiff the same questions regarding an employee named Luke Parinello in 2012.

Plaintiff was terminated on or about July 29, 2013, after she was accused of sending an e-mail containing photographs of two of her co-workers posing together as a couple to fellow co-workers. Plaintiff had previously been involved in an investigation of the two employees depicted in the photos. She denies that she sent the photographs, and takes issue with the manner in which PPG handled the investigation surrounding the incident.

**B.**     **Administrative Proceedings**

On December 9, 2013, Plaintiff cross-filed a charge of discrimination against PPG with

the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunities Commission ("EEOC"). She alleged claims of sex discrimination, age discrimination, and retaliation. As Plaintiff describes it in her Complaint, her EEOC charge alleged "[t]hat the discrimination was based upon many factors, including Defendant's failure to promote Plaintiff; failure to maintain a non-hostile work environment; failure to properly investigate claims made against her; improperly terminating her on July 29, 2013; failure to follow internal procedures concerning ethics and conflict resolution; and failure to reinstated [sic] Plaintiff on November 8, 2013." *Id.* ¶ 80. PPG responded to the charge in a letter dated April 7, 2014. On April 23, 2015, Plaintiff's counsel sent a letter to the EEOC, explaining that she had begun representing Plaintiff. The letter also served as a rebuttal to PPG's position statement. Attached to the letter was a document styled "Amendments to EEOC Charge," in which Plaintiff alleged, *inter alia*, that PPG engaged in pay discrimination against her because of her gender and/or age. Specifically, the document alleged that from 2008 until 2013, Plaintiff "was a manager and [her] level was Senior Research Associate." Amendments to EEOC Charge, ECF No. 11-2. "In this position," Plaintiff "received a salary that was 20% below what other similarly situated males and/or individuals under 40 years old were paid." *Id.*

    **C.**    **Procedural History**

After receiving a right-to-sue letter from the EEOC, Plaintiff initiated this action on November 2, 2015. In Count I, Plaintiff alleges a Title VII sex discrimination claim. Plaintiff claims in this Count (1) that she was terminated because of her gender and replaced by a male employee, (2) that she was paid less than her "male counterparts," and (3) that Defendant failed to "promote" her, while other less qualified and less experienced male employees were promoted. In Count II, Plaintiff alleges a Title VII disparate-impact claim, alleging that

"Defendant maintained policies, patterns, practices, or omissions that adversely impacted females, including Plaintiff, and caused them to be paid less than their male counterparts." Compl. ¶ 96. According to the Complaint, "[t]he subject policies, patterns, practices or omissions included failing to promote females and failing to give them performance review ratings that were as high as similarly situated males." *Id.* ¶ 97. Count III is a claim for disparate treatment under the ADEA, which mirrors Count I. Count IV is a disparate-impact claim under the ADEA, with Plaintiff alleging that the "subject policies, patterns, practices or omissions included failing to promote individuals over the age of 40 . . . and failing to given them performance review ratings that were as high as similarly situated people under the age of 40 . . . ." *Id.* ¶ 114. Count V alleges a claim for age and sex discrimination under the PHRA.

## II. Legal Standard

A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard "does not impose a probability requirement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). However, a pleading must show "more than a sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal*, the court must follow a three-step approach. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010). First, "the court must "tak[e] note of the elements a plaintiff must plead to state a claim.'"

*Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). These facts, moreover, must be interpreted in the light most favorable to the plaintiff, and all reasonable inferences must be drawn in the plaintiff's favor. *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014) (citation omitted).

## III. Discussion

PPG moves to dismiss three aspects of Plaintiff's complaint.[2] First, Defendant argues that Plaintiff's Title VII and ADEA pay discrimination claims should be dismissed because they were not raised before the EEOC in a timely fashion. Second, Defendant argues that Plaintiff's so-called failure-to-promote claim should be dismissed because Plaintiff has not identified any particular position for which she applied and was rejected. Third, Defendant argues that Plaintiff's disparate-impact claims under Title VII and the ADEA are legally insufficient because the complaint fails to identify a specific policy or practice that adversely impacted her and women and/or employees over. These issues will be addressed *seriatim*.

### A. Pay Discrimination

Before bringing suit under Title VII or the ADEA, a plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the EEOC within 300 days of the challenged employment practice. *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 109 (3d Cir. 2014); *Noel v. The Boeing Co.*, 622 F.3d 266, 270 (3d Cir. 2010). "After a plaintiff files a charge

---

2. As already noted, *supra* n.1, PPG has not sought to dismiss Plaintiff's Title VII or ADEA disparate-treatment claims insofar as they relate to her termination. Nor has PPG sought to dismiss Plaintiff's PHRA claim.

7

against an employer with the [EEOC] and subsequently receives a right-to-sue letter, her suit is limited to claims that are within the scope of the initial administrative charge." *Shahin v. Delaware*, 563 F. App'x 196, 198 (3d Cir. 2014) (citing *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)). All claims that were not administratively exhausted within the requisite time period are "administratively barred." *Noel*, 622 F.3d at 270. Under the EEOC's regulations, however, "[a] charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein." 29 C.F.R. § 1601.12(b). And, importantly, "[s]uch amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." *Id.*; *see also* 29 C.F.R. § 1626.8(c) (setting forth the same standard with respect to ADEA claims).

PPG argues that Plaintiff's pay discrimination claims, which were undisputedly not raised by name until Plaintiff submitted her "Amendments" to the EEOC charge in April 2015, do not relate back to the filing of the initial charge and, therefore, are barred from being asserted here. This is so, PPG argues, because the claims are "entirely new and distinct" and "bear no relation whatsoever to the subject matter of [Plaintiff's] original charge." Defs.' Br. 5-6. Plaintiff counters that her amended charge merely "added facts to clarify the original charge," and so the allegations therein should relate back when the charge was filed.

The Court agrees with Plaintiff. As an initial matter, the Court finds that the April 2015 letter from Plaintiff's counsel amounted to a valid amendment of Plaintiff's charge.[3] *See Davis v. Kraft Foods N. Am.*, No. CIV.A. 03-6060, 2006 WL 237512, at *5 (E.D. Pa. Jan. 31, 2006)

---

3. PPG has not contested this point. *See* Def.'s Br. 5 n.2 (explaining that PPG has assumed, for purposes of this motion, that the letter submitted to the EEOC by Plaintiff's counsel "constitutes an amendment to her original charge").

(explaining that "courts have liberally construed letters and related documents sent to the EEOC as amending the original charges"); *Littlejohn v. City of New York*, 795 F.3d 297, 323 (2d Cir. 2015) (explaining that an unsworn letter to the EEOC can amend a charge and will relate-back so long as it satisfies the requirements of 29 C.F.R. § 1601.12(b)).

The Court also finds that the requirements for relation-back have been satisfied. Plaintiff alleged in her initial EEOC charge that "Wilt rejected [her] for all promotional opportunities [she] was eligible for." EEOC Charge, ECF No. 11-2. As Plaintiff explains in her brief, the meaning of the phrase "promotional opportunities" is not entirely clear because PPG apparently has a two-step promotion procedure. First, an employee is moved into a new position for one to two years. Then, assuming that the employee's performance has been satisfactory, the employee is given a corresponding pay raise. According to the complaint, Plaintiff was moved into a managerial role in 2008. However, she was never given the corresponding pay raise to which she believed she was entitled, despite her requests in 2011, 2012, and 2013. It is apparent that the decisions to deny her a raise are at the heart of her claim. Since the amended charge only sought to clarify this – albeit in a manner that, itself, was not exactly clear – it relates back to the date the initial charge was received by the EEOC.[4] *Cf. Mordel v. Ecko Housewares*, No. 89 C 2965, 1989 WL 106600, at *3 (N.D. Ill. Sept. 7, 1989) ("The meaning of the words, pay raises and promotions, are very closely related and can even be used interchangably [sic] in today's business world. As such, this allegation is not considered to be unrelated to what was stated in the EEOC complaint and therefore will not be dismissed."). Accordingly, the Court concludes

---

4. In arguing that Plaintiff's pay discrimination claim is barred, PPG cites cases that say, in a nutshell, that "compensation-related claims and failure-to-promote claims are 'distinct grievances that are not coextensive[.]'" Def.'s Reply Br. 3 (quoting *Noel*, 622 F.3d at 271). That is true, as a general matter. But as the Court will explain, Plaintiff is not really pursuing a true failure-to-promote claim. She is challenging the instances when she was allegedly denied a pay raise and the effect those decisions had on her pay in relation to her male and/or younger colleagues.

that Plaintiff's pay discrimination claims under Title VII and the ADEA are not administratively barred, and Defendant's motion will be denied insofar as it seeks to dismiss these claims.

### B. Failure to "Promote"

A classic failure-to-promote claim has four elements: a plaintiff must "show '(i) that [she] belongs to a [protected category]; (ii) that [she] applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite [her] qualifications, [she] was rejected; and (iv) that, after [her] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.'" *Noel*, 622 F.3d at 274 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)). PPG argues that Plaintiff cannot establish the second and third elements – i.e., that she applied for an open position and was rejected. Plaintiff doesn't dispute that these elements aren't met. Instead she requests leave to amend the complaint to clarify the nature of her claim.

Given the explanation that Plaintiff has already provided in her brief, however, the Court finds that further clarification is not necessary. It is already clear to the Court that, notwithstanding Plaintiff's use of the term "promotion" in her complaint and a variation thereof in her EEOC charge, she is not advancing a true failure-to-promote claim. That is, she is not claiming that she should have been given a new *position*. Rather, the gravamen of Plaintiff's claim is that, after she was given a new position in 2008, she was denied a *corresponding pay raise* – which she was allegedly entitled to under PPG policy – because she is a woman and/or because she is over the age of 40. *See* Pl.'s Br. 11 ("[Plaintiff] believes that after 1 year in the management position, she should have been given a promotion. Instead, her supervisor, Mr. Wilt refused to give her a change in pay and gave various reasons why."). While Plaintiff may not have adequately pled a true failure-to-promote claim (as she concedes), she has adequately pled a

claim that she was not given a raise for discriminatory reasons, and the decision to deny her a raise is an individually actionable "adverse employment action" under Title VII and the ADEA. *See, e.g.*, *Lockridge v. The Univ. Of Maine Sys.*, 597 F.3d 464, 470 (1st Cir. 2010) (concluding that denial of a pay raise could amount to discrimination "against an employee with respect to her compensation on the basis of gender"); *Gillis v. Georgia Dep't of Corr.*, 400 F.3d 883, 887 (11th Cir. 2005) (explaining that the denial of a pay raise is an "adverse employment action"); *Wojciechowski v. Nat'l Oilwell Varco, L.P.*, 763 F. Supp. 2d 832, 858 (S.D. Tex. 2011) (explaining that "[t]here is no question that Defendant's alleged failure to give Plaintiff a raise constitutes an adverse employment action"). Therefore, subject to the understanding that Plaintiff is not actually pursuing a failure-to-promote claim but is really challenging the decisions to deny her a pay raise (and the corresponding effect those decisions had on her level of remuneration vis-à-vis that of her four male manager counterparts), Defendant's motion to dismiss this aspect of the complaint will be denied.[5]

---

5. There still may be some timeliness issues lurking for Plaintiff with respect to her pay discrimination claims, though they do not appear to be fatal. Since Plaintiff filed her EEOC charge on December 9, 2013, she can only challenge discriminatory acts taking place on or after February 12, 2013 (300 days before she filed her EEOC charge). Two of the times Plaintiff was allegedly denied a raise – on unspecified dates in 2011 and 2012 – were outside the cut-off date. However, under the Lilly Ledbetter Fair Pay Act of 2009, which reinstated the "paycheck accrual rule" that the Supreme Court had eliminated in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007),

> an unlawful employment practice occurs, with respect to discrimination in compensation . . . when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

42 U.S.C. § 2000e–5(e)(3)(A). The Third Circuit has held that the denial of a pay raise constitutes a "compensation decision" under the Ledbetter Act. *Mikula v. Allegheny Cnty.*, 583 F.3d 181, 186 (3d Cir. 2009) (citing *Reese v. Ice Cream Specialties, Inc.*, 347 F.3d 1007, 1013 (7th Cir. 2003)). Thus, insofar as Plaintiff's claim is premised on paychecks received after February 12, 2013, which reflect the "periodic implementation" of the previously made discriminatory "compensation decision," the claim is timely. *See id.* The claim, however, would appear to be untimely as to paychecks received before that date.

C.  **Disparate Impact**

"Title VII's disparate-impact provision prohibits employment practices that have the unintentional effect of discriminating based on race." *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011) (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 987 (1988); *Newark Branch, NAACP v. City of Bayonne, N.J.*, 134 F.3d 113, 121 (3d Cir. 1998)). The ADEA also authorizes disparate-impact claims.[6] *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005). Under either statute, such claims have two components. *Watson*, 487 U.S. at 994. "The plaintiff must begin by identifying the specific employment practice that is challenged." *Id.* Then "the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Id.*

With regard to the first requirement, the United States Supreme Court has made clear that "it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather the employee is 'responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.'" *Smith*, 544 U.S. 228, 241 (2005) (quoting *Wards Cove Packing Co. v. Antonio*, 490 U.S. 642, 656 (1989)). PPG argues that Plaintiff has failed to do that in this case. Plaintiff counters that, to the contrary, "the complaint identifies Defendant's apparently neutral processes regarding investigation of employee misconduct, determination of employee discipline for misconduct, determination for promotion and determination of pay," each of which "fall

---

6.    Although both Title VII and the ADEA "authorize recovery on a disparate-impact theory, the scope of disparate-impact liability under ADEA is narrower than under Title VII." *Smith*, 544 U.S. at 240. That is so for two reasons. First, under ADEA, conduct that would otherwise be prohibited is permitted "where the differentiation is based on reasonable factors other than age." *Id.* at 233. Second, the 1991 amendments that expanded the scope of of Title VII "did not amend the ADEA . . . . Hence, *Wards Cove's* pre-1991 interpretation of Title VII's identical [disparate-impact] language remains applicable to the ADEA." *Id.* at 240. These distinctions are not material to this case, though, so Plaintiff's Title VII and ADEA disparate-impact claims will be analyzed together.

more heavily on women than men."[7] Pl.'s Br. 15.

The Court is skeptical whether Plaintiff has been sufficiently precise in her attempt to isolate the particular employment practice(s) responsible for the alleged disparity. Presumably, each of the "processes" Plaintiff has identified has multiple components, but Plaintiff has made no effort to identify which of those she is challenging. She has also not attempted to show that the elements of these "processes" "are not capable of separation for analysis," such that each of them "may be analyzed as one employment practice." 42 U.S.C. § 2000e-2(k)(1)(B)(i).

However, even casting these concerns aside, Plaintiff's attempt to plead a disparate-impact claim fails because it suffers from an even bigger defect. As PPG argues, the complaint contains a "complete lack of factual content directed at disparate-impact liability." *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014). To succeed on a disparate-impact claim, it is not enough for a plaintiff to show that she was negatively affected by the challenged employment practice. *See Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 121 (3d Cir. 1983) (citations omitted) ("An adverse effect on a single employee, or even a few employees, is not sufficient to establish disparate impact"). Rather, there must be proof that "other similarly situated employees" were "likewise affected." *Id.* "[P]laintiffs are permitted to rely on a variety of statistical methods and comparisons to support their claims," and, at least at this early stage of the lawsuit, "some basic allegations of this sort will suffice." *Adams*, 742 F.3d at 733.

---

7. It bears noting that in the counts of her complaint dedicated to disparate impact, Plaintiff says nothing about the investigative and disciplinary procedures employed by PPG. She alleges only that the "subject policies, patterns, practices or omissions included *failing to promote females and failing to give them performance review ratings that were as high as similarly situated males*" and "*failing to promote individuals over the age of 40 . . . and failing to given them performance review ratings that were as high as similarly situated people under the age of 40.*" Compl. ¶¶ 97, 114 (emphasis added). Nevertheless, Plaintiff does make allegations with respect to the four procedures discussed in her brief elsewhere in her complaint. Because her disparate-impact claim fails for other reasons, the Court will give Plaintiff the benefit of the doubt and assume that she properly identified the challenged employment practices in her complaint, as is required. *See EEOC v. Peoplemark, Inc.*, 732 F.3d 584, 591 (6th Cir. 2013) (citations omitted) ("A party alleging a disparate-impact theory must allege a specific employment practice in the complaint.").

Plaintiff's complaint comes up woefully short in this respect. It does not allege any facts tending to show that PPG's process of investigating misconduct disparately impacted women and/or workers over age 40. Nor does it allege facts to support the conclusion that PPG's disciplinary procedures fell more harshly on women and/or older workers or that the way in which PPG determined promotions and pay had such an effect.

While Plaintiff does employ some disparate-impact buzzwords in her complaint – e.g., she claims that PPG's policies "adversely impacted" women – these "are bare legal conclusions, not facts[,]" *id.*, and thus cannot carry Plaintiff's claim over the plausibility threshold. Likewise, Plaintiff's assertion that only 20 percent of the 70 to 80 employees in the Research Group were women is not enough to save her claim. For one thing, Plaintiff has not attempted to explain how any of the challenged employment practices (again, assuming the "processes" she identified qualify as such) have any connection to the number of women employed in the Research Group. *See Wards Cove*, 490 U.S. 642, 657 (1989) (explaining that disparate-impact plaintiffs "have to demonstrate that the disparity they complain of is the result of one or more of the employment practices that they are attacking"). Indeed, she is not challenging PPG's hiring practices; nor could she since she *was* hired. *See Embrico v. U.S. Steel Corp.*, 404 F. Supp. 2d 802, 828 (E.D. Pa. 2005) ("As a threshold matter, however, a plaintiff must have suffered some type of adverse employment action before he or she can bring a cognizable disparate impact claim."). Furthermore, even if she were making such a challenge, she has not alleged any facts about the number of qualified potential applicants in the relevant labor market, so the 20 percent figure, standing alone, is totally meaningless. *See City of Bayonne*, 134 F.3d at 121. In view of these deficiencies, Plaintiff's disparate-impact claims under Title VII and the ADEA will be dismissed.

At the conclusion of her brief, Plaintiff tacks on a one-sentence request for leave to

amend her complaint, in the event that the Court dismisses her disparate-impact claims – which it plans to do. *See* Pl.'s Br. 14. This "'single sentence, lacking a statement for the grounds for amendment and dangling at the end of her memorandum, [does] not rise to the level of a motion for leave to amend.'" *Ramsgate Court Townhome Ass'n v. W. Chester Borough*, 313 F.3d 157, 161 (3d Cir. 2002) (quoting *Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1187 (10th Cir. 1999)). Without having been provided a proposed amended complaint or at least a description of the proposed amendments, this Court has "nothing upon which to exercise its discretion" to permit a curative amendment. *See id.* (citing *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). Therefore, Plaintiff's last-gasp request for leave to amend will be denied, and her disparate-impact claims will be dismissed with prejudice. *See Ruddy v. U.S. Postal Serv.*, 455 F. App'x 279, 283 (3d Cir. 2011) (quoting *Ramsgate*, 313 F.3d at 161) ("hold[ing] [that] the District Court did not abuse its discretion by denying [the plaintiff's] request to file an amended complaint, because . . . [the plaintiff's] failure to file a motion for leave to amend or an amended complaint meant the District Court 'had nothing upon which to exercise its discretion'").

## IV.    Conclusion

For the reasons stated, PPG's motion to dismiss will be **GRANTED IN PART** and **DENIED IN PART**. Plaintiff will be permitted to pursue her pay discrimination claim and her claim that she was unlawfully denied a pay raise because of her gender and/or age. However, her disparate-impact claims under Title VII and the ADEA will be dismissed, without leave to amend. An appropriate order follows.

McVerry, S.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL KNOX,<br>　　　　　Plaintiff,<br><br>　　　v.<br><br>PPG INDUSTRIES, INC.,<br>　　　　　Defendant. | )<br>)<br>)<br>)<br>) 2:15-cv-1434<br>)<br>)<br>)<br>)<br>) |

# ORDER

**AND NOW**, this 22nd day of January, 2016, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that DEFENDANT'S MOTION TO DISMISS (ECF No. 11) is **GRANTED IN PART**, insofar as it relates to Plaintiff's disparate-impact claims under Title VII and the ADEA, and **DENIED IN PART**, in all other respects. Plaintiff's disparate-impact claims under Title VII and the ADEA are hereby **DISMISSED WITH PREJUDICE**.

Defendant shall file an answer to the remaining counts on or before **February 5, 2016**. The parties shall confer as necessary and file their Stipulation Selecting ADR Process and their Rule 26(f) Report on or before **February 19, 2016**. The Initial Case Management Conference is hereby **SCHEDULED** on **March 3, 2016, at 8:30 a.m.** in Courtroom 6C.

　　　　　　　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　<u>s/Terrence F. McVerry</u>
　　　　　　　　　　　　　　　　　　Senior United States District Judge

cc:　**Brian D. Walters**
　　　Email: bdw@deltalawgrp.com
　　　**Theodore A. Schroeder**
　　　Email: tschroeder@littler.com
　　　**Allison R. Brown**
　　　Email: arbrown@littler.com