# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROL KNOX, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 15-1434 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| PPG INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Pending before the Court is the Motion for Summary Judgment filed by Defendant, PPG Industries, Inc. ("PPG"). (Doc. 57). For the reasons that follow, the Motion will be granted in part and denied in part.

## BACKGROUND[1]

PPG employed Plaintiff, Carol Knox ("Knox") from 1990 until her termination on July 29, 2013. (Pl.'s Stmt. of Facts at ¶¶ 2, 11, Doc. 70). During her 23 years with PPG, Knox worked in several different areas, and took on positions of increased responsibility and complexity. (Id. at ¶ 5). From 2007 through 2013, Knox held the job title of Senior Research Associate, and in 2008, Knox became the Project Manager of PPG's Teslin research and development group. (Pl.'s Resp. to Def.'s Facts at ¶¶ 3-6, Doc. 71). The Teslin group was divided into two sectors: research and development (R&D) and business. (Doc. 70 at ¶ 12).

---

[1] Unless otherwise noted, the factual background is derived from the undisputed evidence of record, and the disputed evidence is viewed in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable interferences are to be drawn in his favor.").

After Knox's former supervisor, Peter Foller, retired in or around June 2010, Truman Wilt ("Wilt") supervised Knox until the date of her termination. (Doc. 71 at ¶¶ 9-10). At the time of her termination, she was the only woman among Wilt's five direct reports. (Doc. 77 at ¶ 157). Knox alleges that during her first meeting with Wilt, he told her that he was "uncomfortable around women" and then said "I had a girl work for me before and she went into business, I think women are better suited in business, you should think about going into business." (Id. at ¶ 15). She alleges that she was denied a customary pay raise at the time Wilt became her supervisor and that Wilt denied her subsequent requests for a raise in 2011, 2012 and 2013. (Id. at ¶¶ 37-38).

During the period of Wilt's supervision, she alleges that Wilt directed sexist remarks at her, such as "women are usually liberal tree hugging democrats," called one of her projects a "woman's project," and routinely referred to adult professional women as "girls." (Id. at ¶¶ 17, 23, 25). Knox also alleges that in June 2013, shortly before her firing, she was made aware of a position in PPG's Government Contracts group. (Id. at ¶ 26). She alleges that Wilt displayed excitement at the prospect that she might leave his group, thus enabling him to replace her with a male employee, and later became irate and physically menacing when he learned that she was not likely to take the new position. (Id. at ¶¶ 27-29). Following this, she alleges that Wilt engaged in a course of action to get her to leave his group. (Id. at ¶¶ 30-31).

In addition to disputing the facts above, PPG alleges that it had a legitimate basis for firing Knox. (Id. at ¶¶ 17, 23, 25-29, 31; Doc. 71 at ¶¶ 51, 57). On July 23, 2013, Knox and six other PPG employees received an email from the address jimmyboyppg@yahoo.com with the subject line "Miss Her?" (Doc. 71 at ¶ 39). Attached to the email were approximately thirty pictures of two of Knox's former direct reports, Jim Boyer and Christine Gardner. (Id. at ¶ 40).

The photographs were not explicit, but were suggestive of a romantic relationship between them. (Id.) It is undisputed that PPG has proffered this email as the catalyst for terminating Knox's employment. (Id. at ¶ 57; Doc. 77 at ¶ 144). To provide additional relevant background, prior to Wilt's supervision, Knox had been involved in an investigation into whether the relationship between Gardner and Boyer violated PPG's internal policies, and Knox alleges that she was directed to continue monitoring and documenting the relationship. (Doc. 71 at ¶¶ 42, 49-50). The parties actively dispute the events surrounding the July 2013 email, the investigation into its sender and the reasons for Knox's termination. (See generally, Doc. 77 at ¶¶ 64-156).

The following facts, however, are undisputed. Knox, who was on vacation at the time the email was sent in July, forwarded the email from jimmyboyppg@yahoo.com to Allan Foss, PPG's Monroeville Chemical Center's ("MCC's") Director of Human Resources, Wilt, and herself. (Doc. 71 at ¶ 41). Following his receipt of Knox's email, Foss consulted with PPG's Manager of Employee Relations, Thomas Mordowanec, and began an investigation to determine jimmyboyppg@yahoo.com's identity. (Id. at ¶¶ 42, 44). Foss interviewed the recipients of the email, including Boyer and Knox. (Id. at ¶ 44). Foss also sought assistance from PPG's IT department to try to determine who sent the email. (Id. at ¶ 45).

PPG's IT Security Director, Robert Wagner, searched the computers of Boyer and Knox and found a folder in Knox's Outlook mailbox entitled "Christine Gardner." (Id. at ¶¶ 46, 47). The folder contained an earlier email from the address prince.jimmy.b@gmail.com dated January 29, 2013 with the subject line "finally time." (Id. at ¶ 47). Gardner had left her position at PPG the previous day, on January 28, 2013. (Doc. 77 at ¶ 55). The January email contained broken links to thirty-one .jpeg image files stored in Google Docs, and the names of these files substantially overlapped with the names of the files attached in the July email. (Doc. 71 at ¶ 48;

3

Doc. 70 at ¶¶ 118-121). On July 29, 2013, Foss and Wagner questioned Knox in person about the emails. (Doc. 71 at ¶ 54). During this meeting, Knox stated that she had never seen the January email and that she had no knowledge of who sent it. (Doc. 70 at ¶¶ 133, 137). At the conclusion of this meeting, Foss terminated Knox's employment. (Id. at ¶ 143). Wilt was not present, but he was a party to the termination decision. (Doc. 77 at ¶¶ 125, 128). PPG claims that the reason for the termination was that Foss believed that Knox was not fully cooperating with PPG's investigation and that he believed Knox was responsible for sending the July 23, 2013 email.[2] (Doc. 71 at ¶ 57).

After her termination, Knox requested Corporate Facilitation, a step within the employee dispute resolution process called "Resolve." (Def's Stmt. of Facts at ¶ 58, Doc. 59). PPG's Global Human Resources Director, Cassandra Tembo, investigated the termination. (Id. at ¶ 59). This investigation included interviewing Knox and nine other PPG employees, reviewing various documents including, Foss's investigation file, notes from interviews and Wagner's IT incident report. (Id. at ¶ 61). Tembo determined that PPG terminated Knox because they concluded that she was responsible for sending the July 2013 email, as the January email in Knox's folder resembled the July email, and they did not believe her denial of knowledge of the January email. (Id. at ¶ 62). Based Tembo's findings, senior management, which included Foss, Wilt and others, upheld the decision to terminate Knox's employment. (Id. at ¶ 64).

---

[2] Specifically, PPG argues that the evidence reveals that the reasons for Knox's termination on July 29, 2013, included: Foss's belief that (1) Knox was responsible for sending the email to herself and others on July 23, 2013, from the jimmyboyppg@yahoo.com email account; (2) Knox was lying at the time she denied any knowledge of the January 29, 2013 email, (3) Knox failed to cooperate with the investigation and (4) Knox had motive and opportunity to send the July 23, 2013 email. (Doc. 77 at ¶ 144).

4

Although Plaintiff does not dispute the events set forth above, Plaintiff claims that she was terminated, and denied raises and equal pay, because of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA").[3] (Comp. at ¶¶ 85-92, Doc. 1). Knox contends that the real reason for her termination was that Wilt did not want Knox to work in his group because she is a woman. (Id. at ¶ 1). Knox claims that when she refused to transfer out of Wilt's group, Wilt falsely accused her of sending an anonymous email to PPG employees and conducted a sham investigation in order to have her fired. (Id.)

Defendant moves for summary judgment, arguing that PPG had a legitimate, non-discriminatory reason for firing Knox, which she cannot establish was a pretext for discrimination, and that there are no genuine issues of material fact with respect to the discriminatory pay claims. (Def.'s Br. in Supp. of Mot. for Summ. J. at 1-2, Doc. 58).

**LEGAL STANDARD**

## I. Unlawful sex-based termination under Title VII and the PHRA

Under the familiar burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973),[4] Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination, after which the burden shifts to the defendant to present a legitimate,

---

[3] Plaintiff's Complaint also states claims for age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 and the PHRA, 43 P.S. §§ 951-963. (Doc. 1 at ¶ 102). However, Plaintiff has abandoned her age discrimination claims by failing to respond to Defendant's Motion for Summary Judgment on those claims. Nykiel v. Borough of Sharpsburg, 778 F. Supp. 2d 573, 588 (W.D. Pa. 2011); Venter v. Potter, 694 F. Supp. 2d 412, 425 n.8 (W.D. Pa. 2010). Therefore, Defendant's Motion for Summary Judgment on Plaintiff's age discrimination claims will be granted and judgment will be entered for Defendant on those claims.

[4] The analysis required for adjudicating a PHRA discrimination claim is the same as the Title VII inquiry; therefore, the Court will address both claims under the same analysis. Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 317 n.3 (3d Cir. 2000).

5

nondiscriminatory reason for its adverse employment decision. Id. at 802; Stanziale v. Jargowsky, 200 F.3d 101, 105 (3d Cir. 2000). "This burden is 'relatively light,' and the employer need only 'introduc[e] evidence which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision.'" Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006) (quoting Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994)). If Defendant meets this burden, the burden of production shifts back to the Plaintiff to demonstrate by a preponderance of the evidence that the reasons offered by the Defendant are pretext for discrimination. McDonnell Douglas Corp. 411 U.S. at 804; Fuentes, 32 F.3d at 763.

To establish pretext, Plaintiff must "point to some evidence, direct or circumstantial, from which a fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Tomasso, 445 F.3d at 706 (quoting Fuentes 32 F.3d at 764) (internal quotations omitted); Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d 358, 370 (3d Cir. 2008) ("Put another way, to avoid summary judgment the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a fact-finder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, that the proffered reason is a pretext)").

## II. Unlawful sex-based pay discrimination under Title VII and the PHRA

To establish a *prima facie* case of pay discrimination under Title VII, a plaintiff must show that she was: (1) a member of a protected class; (2) qualified for the position (3) suffered an adverse employment action; and (4) similarly situated non-protected employees, i.e. "comparators," were treated more favorably. Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983

F.2d 509, 522 (3d Cir. 1993); Summy-Long v. Pennsylvania State Univ., 226 F. Supp. 3d 371, 395 (M.D. Pa. 2016), aff'd, No. 17-1206, 2017 WL 5125627 (3d Cir. Nov. 6, 2017) (citing Johnson v. McGraw-Hill Companies, 451 F. Supp. 2d 681, 691 (W.D. Pa. 2006)). "While 'similarly situated' does not mean identically situated, the plaintiff must nevertheless be similar in all relevant respects." Opsatnik v. Norfolk Southern Corp., 335 Fed. App'x 220, 222–23 (3d Cir. 2009) (internal citations and quotation marks omitted). To meet this initial burden, a plaintiff must demonstrate that she was "performing work substantially equal to that of the [male] employees who were compensated at higher rates" than she was. Summy-Long, 226 F. Supp. 3d at 395 (quoting Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1087 (3d Cir. 1996)).

**DISCUSSION**

   **I.   Termination Claims**

Plaintiff alleges that Defendant discriminated against her on the basis of her sex, in violation of Title VII and the PHRA, by terminating her employment on July 29, 2013.

For the purposes this motion, Defendant concedes the existence of a *prima facie* case as it relates to Knox's termination. (Doc. 58 at p. 3). The Court finds that the second step of the McDonnell Douglas framework also has been satisfied. Defendant asserts that PPG had a legitimate, non-discriminatory reason for terminating Knox, specifically that PPG did not believe Knox was fully cooperating with PPG's internal investigation and that they thought she sent the July 23, 2013 email in an attempt to discredit or damage another employee's reputation. (Id. at p. 4). In support of this claim, Defendant points to the discovery of a January 29, 2013 email in Plaintiff's Outlook mailbox, which resembled the July email. (Id.) Defendant argues that this finding and her allegedly incredible statements when interviewed, including her denial of filing

7

or having any knowledge of the January email, which PPG did not believe, informed the belief that she was responsible for the July email. (Id. at pp. 4-5). The Court agrees that this evidence is damning and does provide legitimate grounds for termination. However, the burden now shifts to Plaintiff to present sufficient evidence for a reasonable jury to find that PPG's stated reasons for termination were a pretext for intentional discrimination. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 255 (1981).

Plaintiff provides evidence for a number of facts that, if believed by a jury, could support an inference that the investigation was a pretext for discrimination. The question for the Court is whether this evidence meets Plaintiff's burden. The Court finds that the totality of the evidence is sufficient—albeit barely—to allow a reasonable juror to conclude that the investigation was a ruse to mask discrimination. A discussion of the relevant evidence, viewed in a light most favorable to Plaintiff, follows.

In support of her claim, Plaintiff contends that Wilt made several remarks to her that demonstrated a bias against women and that such bias motivated her termination. Specifically, Plaintiff alleges that, in 2010, during her first meeting with Wilt, Wilt told Knox that he "was uncomfortable around women" and said, "I had a girl work for me before and she went into business, I think women are better suited in business, you should think about going into business." (Doc. 70 at ¶ 15). Knox alleges that Wilt made numerous other sexists remarks while she was under his supervision, including stating privately to Knox that "women are usually liberal tree hugging democrats" when he had previously made it known that he was conservative. (Id. at ¶ 17). Knox also alleges Wilt treated her differently than her male counterparts by assigning her to administrative teams (such as the United Way, Cross Group Committee), while assigning men to technical teams (such as Mega-Trends and New Technology). (Id. at ¶ 34).

8

Knox claims that she reported concerns about Wilt's behavior towards women to John Coyne and Allan Foss, the two individuals who served as MCC's Director of Human Resources during this time. (Id. at ¶¶ 35-40). Her complaints included allegations that Wilt was not hiring and promoting more women and that he had removed her from a list of employees identified for promotion within the company. (Id.)

In June 2013, Knox claims that Wilt attempted to drive her out of his group by encouraging her to take a position in PPG's Government Contracts group. (Id. at ¶¶ 26-31). When Knox told Wilt that she had decided not to transfer, Knox alleges that Wilt become "irate and physically menacing" to her. (Pl. Exhibit 1, at ¶ 35). Knox claims that Wilt started screaming, telling Knox, "I can't believe this bullshit" and "you should reconsider." (Id.). Knox states that she rejected an offer to transfer in early-to-mid July, 2013. (Id. at ¶ 36). She was terminated a couple of weeks later and replaced by a male employee. (Doc. 70 at ¶ 60; Doc. 71 at ¶ 17).

PPG disputes that Wilt made any of these alleged comments, and argues that even if Wilt made them, the comments are merely "stray remarks." (Doc. 58 at p. 14). The Court of Appeals for the Third Circuit has held that "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given any weight, particularly if they were made temporally remote from the date of decision." Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992). In considering whether remarks are probative of discrimination, the Court looks to the following factors: "(1) the relationship of the speaker to the employee and within the corporate hierarchy; (2) the temporal proximity of the statement to the adverse employment decision; and (3) the purpose and content of the statement." See Parker v.

Verizon Penn., Inc., 309 Fed. Appx. 551, 558–59 (3d Cir. 2009) (quoting Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 133 (3d Cir. 1997) (internal quotation marks omitted)).

Here, Wilt was one of the decision-makers actively involved in Knox's termination. (Doc. 77 at ¶¶ 128-131). Although Wilt's level of influence over the process is disputed, Wilt was clearly within "the chain of decision-makers" who had the authority to fire plaintiff. See Gomez v. Allegheny Health Services, Inc., 71 F.3d 1079, 1085 (3d Cir. 1995). And, although the initial sex-based remarks occurred almost three years prior to Knox's termination, allegations that Wilt continued to harbor a discriminatory animus against women are relevant in determining whether sex-based animus motivated her termination. Abrams v. Lightolier Inc., 50 F.3d 1204, 1214 (3d Cir. 1995) ("statements temporally remote from the decision at issue, may properly be used to build a circumstantial case of discrimination"). The comments suggesting that Knox should consider another position at PPG because Wilt believed women were better suited for business relate directly to Knox's role within the company, and offer the jury a context in which to interpret Wilt's later statements and actions. Based on the totality of Wilt's alleged behavior, a juror crediting Plaintiff's evidence could conclude that Wilt's desire for Knox to transfer in 2013, his anger when she did not, and her subsequent termination just a few weeks later, were motivated by gender animus and that the investigation into the July email was initiated as a pretext for Defendant's decision to terminate Plaintiff on the basis of her gender.

Finally, Plaintiff argues that her evidence shows that the investigation suffered from various flaws, including a failure to adequately explore other explanations for who might have sent the July email. (e.g., Doc. 77 at ¶¶ 104-107). "[I]t is well-recognized that the fact that a company conducted an inadequate investigation of employee misconduct or failed to interview an employee during an internal investigation, *without more*, is not sufficient to raise an inference

10

of discrimination." DeCecco v. UPMC, 3 F. Supp. 3d 337, 381–82 (W.D. Pa. 2014) (internal citations omitted) (emphasis added). Here, however, as demonstrated above, Plaintiff relies upon more than PPG's purportedly flawed investigation to establish pretext.

Under these circumstances, the Court simply cannot definitively conclude that gender discrimination did not motivate the firing decision as a matter of law. We find that Plaintiff has presented sufficient evidence, by a slim margin, for a reasonable juror to find that PPG's proffered reason for Knox's termination was pretextual and that the investigation was a convenient ruse for unlawful discrimination. Thus, there is a genuine dispute concerning material facts. Defendant's Motion for Summary Judgment on the sex discrimination claims, as they related to Knox's termination, will be denied.

## II. Pay Discrimination Claims

Knox also alleges pay discrimination based upon sex, specifically claiming that she was paid less than her male counterparts and was denied pay raises, despite requests in 2011, 2012, and 2013.[5]

Knox compares herself to four male managers, who also report to Wilt: Federico Menta (Associate Director of PPG's Optical Materials and Coatings group), Dave Sartori (Associate Director of PPG's Photochromics group), Anil Kumar (Scientist in PPG's Photochromics group, and Raphael Kollah (Associate Director of PPG's Silicas group). (Doc. 71 at ¶ 74). All of these "comparators" earned more than Plaintiff. (Id. at ¶75). However, none of them shared the same title as Knox, and only Kumar shared the same pay band. (Id. at ¶¶ 76-125).

---

[5] Since Plaintiff filed her EEOC charge on December 9, 2013, she can only challenge paychecks received after February 12, 2013. (Doc. 18 at p. 11 n.5).

Knox argues that these employees were engaged in "basically the same work and responsibilities—managing the research and development for a business unit." (Doc. 70 at ¶ 158). However, she offers no factual evidence addressing how the work she performed was substantially similar to these employees, despite her acknowledgment that "similar work" is a highly fact-specific inquiry. (Doc. 68 at p. 26). Plaintiff has not met her burden, and the Court finds that Plaintiff has failed to create a genuine issue of fact sufficient as a matter law to survive summary judgment. See Frintner v. TruePosition, 892 F. Supp. 2d 699, 712 (E.D. Pa. 2012) (broad job similarities are insufficient to meet burden for comparability at summary judgment); Nagle v. RMA, The Risk Mgmt. Ass'n, 513 F. Supp. 2d 383, 389 (E.D. Pa. 2007) (granting summary judgment for defendant because plaintiff, a department manager comparing herself to other department managers, offered no evidence as to what a manager's duties were or how managers were similarly situated).

Moreover, it is undisputed that during the relevant time period, Knox, when compared to Menta, Sartori, Kumar, and Kollah, supervised the least number of employees, oversaw the smallest research and development budget, and supported the business group that produced the lowest revenue for PPG. (Doc. 71 at ¶¶ 77-125). The Court finds that differences in these key variables are enough to distinguish Knox's job responsibilities from those of her male counterparts. Therefore, the Court finds that Knox has failed to submit evidence that would support a *prima facie* case for pay discrimination because she has failed to present evidence that the employees she has identified are "similarly situated," and she has thus failed to find a suitable comparator.

Even if Knox had succeeded in establishing a *prima facie* case, she did not meet her remaining burden under the McDonnell Douglas framework of demonstrating by a

preponderance of the evidence that the reasons offered by the Defendant for its actions were a pretext for gender-based pay discrimination. PPG states that the salaries reflect PPG's merit-based system of compensating employees based on the impact of their accomplishments on business results. (Doc. 58 at p. 22). The fact that these individuals managed larger, more profitable business groups is a legitimate nondiscriminatory explanation for the discrepancy in pay. Knox fails to respond with any affirmative evidence that PPG's proffered reason for the wage disparities between her and her alleged comparators is pretextual. Therefore, summary judgment as to this portion of the claim is appropriate. See Aman, 85 F.3d at 1087 (affirming summary judgment on plaintiff's unequal pay claim where plaintiff did not identify any evidence tending to show that defendant's explanations for the salary differential were pretextual).

Knox also argues that Wilt denied Knox raises that she should have received in 2011, 2012, and 2013. (Doc. 70 at ¶ 38). She further claims that "similarly situated male employees (Brian Rearick and Peter Drzal)" received raises when she did not. (Id.) However, PPG has produced documentation of Knox's payroll history demonstrating that she did, in fact, receive salary increases in March 2011, March 2012, and March 2013. (Id.; Knox's Appendix, Doc. 69-32). Knox has not sought to explain or refute these pay increases. Moreover, Plaintiff's vague allegation offers no supporting evidence that would allow the Court to determine that she was denied a raise because she is a woman. Thus, the Court finds that PPG is entitled to summary judgment on Knox's pay discrimination claims.

\* \* \*

Consistent with the foregoing, the Court hereby enters the following:

Defendant's Motion for Summary Judgment (Doc. 57) is **DENIED** with respect to Plaintiff's claims, under Title VII and the PHRA, that she was terminated because of her sex and

**GRANTED** with respect to Plaintiff's pay discrimination claims (styled as "failure to promote" claims in Plaintiff's Complaint) and her remaining age discrimination claims.

IT IS SO ORDERED.

March 15, 2018  s\Cathy Bissoon
Cathy Bissoon
United States District Judge

cc (via ECF email notification):

All Counsel of Record