IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

CAROL KNOX                                                                    PLAINTIFF

VS.                                      2:15-CV-01434-BRW

PPG INDUSTRIES, INC.                                                          DEFENDANT

ORDER

Pending is Plaintiff's Amended Motion for Attorneys' Fees and Costs (Doc. No. 208). Defendant has responded and Plaintiff has replied.[1] For the reasons set out below, the motion is GRANTED IN PART and DENIED IN PART.

I.      BACKGROUND

Plaintiff alleged that she was fired on July 29, 2013 because of her sex, in violation of Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act. After a three-day trial, the jury found in favor of Plaintiff and awarded her $478,585 in back pay, $993,495 in front pay, and $1,500,000 in non-economic damages.[2] On May 15, 2019, I granted Defendant's Motion for Remittitur, amended the judgment, and reduced the non-economic damages to $300,000. The prejudgment interest on back pay was increased to $60,434.22.[3]

On March 1, 2019, Plaintiff filed a Motion for Attorneys' Fees and Costs.[4] When denying that motion, I noted:

> The number hours billed, hourly rates, and total fee request of over $1.5 million are unreasonable. The Third Circuit recognized, "[w]hen a party submits a fee petition,

---

[1] Doc. Nos. 212, 221.

[2] Doc. No. 179.

[3] Doc. No. 218.

[4] Doc. No. 193.

1

it is not the 'opening bid in the quest for an award.'" That court also has approved dismissing a fee request in its entirety when the request "was not adequately supported and the requested amount was grossly excessive given the nature of the case."[5]

Plaintiff filed a second Motion for Attorneys' Fees and Costs on April 15, 2019, seeking "reimbursement for her attorneys' fees of $1,098,209, expert and consultant fees of $162,165, and costs in the amount of $48,303."[6] The costs and consultant fees request was unchanged from the original request, but Plaintiff asserts that she "drastically reduced her hours claimed by 33% and her fees claimed by 29%, reducing the requested fees by $439,003."[7] The only additional documents provided were two affidavits regarding billing rates in the community.[8]

## II. DISCUSSION

The lodestar method is the "most useful starting point for determining the amount of a reasonable fee."[9] It requires the court to consider "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[10] Then the court "can adjust a fee award upward or downward based upon the results obtained in a case."[11] "[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a

---

[5]Doc. No. 204 (internal citations omitted).

[6]Doc. No. 209.

[7]*Id.*

[8]Doc. Nos. 209-21, 209-22.

[9]*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

[10]*Id.*

[11]*McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009).

comparable case."[12]  "A reasonable fee is one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys."[13]

"An attorney fees award under a fee-shifting statute should be comparable to what is traditionally paid to attorneys who are compensated by a fee-paying client."[14]  Hours that were not "reasonably expended" must be excluded.[15]  "Cases may be overstaffed, and the skill and experience of lawyers vary widely.  Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."[16]

Despite the considerable discretion reserved to the trial court in the setting of a fee award, my role in reviewing that award is "not merely . . . passive."[17]  Instead, I must "'go line, by line, by line' through the billing records supporting the fee request."[18]

### A. Attorneys' Fees

On April 8, 2019, I denied Plaintiff's first fee petition, without prejudice, finding that the number of hours billed, hourly rates, and total fees were unreasonable.  Plaintiff submitted a new fee petition and made some reductions, but excessive and redundant hours remain in the request.

---

[12]*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551(2010) (emphasis in orginal).

[13]*Blum v. Stenson*, 465 U.S. 866, 897 (1984).

[14]*Morales v. Farmland Foods, Inc.*, No. 8:08CV504, 2013 WL 1704722, at *7 (D. Neb. Apr. 18, 2013) (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 287 (1989)).

[15]*Hensley*, 461 U.S. at 434.

[16]*Id.*

[17]*Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).

[18]*Evans v. Port Authority of New York and New Jersey*, 273 F.3d 346, 362 (3d Cir. 2001).

      **1.**      **Hourly Rates**

Plaintiff requests the following hourly rates for the lawyers who worked on this case:

| | |
|---|---|
| Bruce Fox | $600 |
| Brian Walters | $475 |
| Jeffrey Cadle | $350 |
| Andrew Horowitz | $325 |
| Qiwei Chen | $295[19] |

Having not practiced law in over 25 years, I am not fully attuned to the current hourly rates charged in this legal community (Little Rock) or the Pittsburgh area. However, I regularly review hourly rate requests, and have often found that they are not fully two-blocked with the actual prevailing rate.

While I have not run across a Third Circuit case on the issue, I assume that I should consider the fact that a recovery of an attorneys' fee at all is contingent on victory.

According to the affidavits submitted by Plaintiff, the requested rates are consistent with lawyers in the area who work on similar cases.[20] However, in another case in the Western District of Pennsylvania being litigated during this same time-period, some of these same lawyers billed at lower rates.[21] While I realize that at some point the rates may have gone up, nothing in the submitted documentation indicates when the rate-hike happened. Had Plaintiff's lawyers not been retained on a contingency basis, they would have been required to notify their client of the rate increase and include the new rate in the billing. Considering the fact that other clients were charged lower hourly rates during the same time period, the requested rates are

---

[19]Doc. No. 209.

[20]Doc. Nos. 209-3, 209-4, 209-5, 209-6

[21]Doc. No. 200-12. Mr. Fox claimed $500/hr and Mr. Horowitz claimed $265/hr; see also *Boyington v. Percheron Field Service, LLC.*, No. 3:14-CV-00090-KRG (W.D. Pa. July 5, 2018), Doc. No. 300-1 (Mr. Fox claimed $520/hr, Mr. Cadle $295/hr, Mr. Horowitz $295/hr, and Ms. Chin $265/hour).

excessive. Additionally, I note that other civil rights lawyers in the area charged significantly lower rates ($250-$290) during the same time period.[22] Accordingly, I find the following are the reasonable hourly rates in this case:

| | |
|---|---|
| Bruce Fox | $400 |
| Brian Walters | $300 |
| Jeffrey Cadle | $300 |
| Andrew Horowitz | $250 |
| Qiwei Chen | $250 |

Based on the hours Plaintiff submitted,[23] this would result in a fee of $790,430. However, as set out below, the hours billed are excessive.

> **2.  Hours Billed**

The number of hours billed in this fairly straightforward case are unduly optimistic. Below are a few, but not all, of the billing requests that cause me to pause:

**Post-Discovery Position Letter** – According to the submissions, it took four lawyers 22 hours to draft and revise a post-discovery position letter to Judge Bissoon. However, the letter consisted of only a brief statement of the facts; a discussion of the party's strengths and weaknesses; and the party's settlement position.

**Depositions** – Plaintiff's lawyers billed over 110 hours for work related to the depositions of Truman Wilt and Allan Foss. Yet, each of these depositions took less than a day to complete. Additionally, around 40 hours was for work by lawyers who did not take the depositions. Plaintiff also billed over 70 hours for four lawyers preparing for, attending, and

---

[22] *Harris v. Vitran Express, Inc.*, No. 2:14-CV-00704-CRE (W.D. Pa. Dec. 2, 2016), Doc. No. 135-5.

[23] Doc. No. 209 (Fox = 694.9, Walters = 624.4, Cadle = 811.5, Horowitz = 141.6, Chin = 185.2).

reviewing Jim Boyer's deposition. Finally, it is somewhat untoward to charge an adversary for the attendance of two lawyers at a deposition.[24]

**Amended Complaint** – Plaintiff's lawyers spent over 98 hours working on the amended complaint, which is excessive. Additionally, the Court denied leave to file the amended complaint.

**Response to Motion for Summary Judgment** – Plaintiff's lawyers spent over 250 hours responding to Defendant's Motion for Summary Judgment. The documents totaled 54 pages, but Plaintiff spent over six weeks working on them.[25] This claims too much time. I'm not sure how exactly to define "too much" in this context, but I know it when I see it.

**Trial Preparation Time** – Plaintiff's lawyers billed 700 hours on trial preparation. This included over 70 hours, billed mainly by Mr. Fox, at a rate of $600 an hour, for a mock trial. Notably, the 70-hour mock trial is double the time spent in the actual trial. Additionally, the hours spent on trial preparation are approximately 25 times longer than the actual trial. I doubt any court-wise client would pay a lawyer for 700 hours of trial preparation for a three-day trial.

**Trial Billing** – Plaintiff's lawyers billed 114 hours for three lawyers attending trial. Mr. Cadle handled one direct examination; Mr. Walters handled two direct examinations; and Mr. Fox handled the rest. Although all three lawyers were actively involved to some extent, three lawyers were not necessary. "Given [these lawyers'] professed expertise . . . , it would not have been unreasonable to expect" that one of them would have been able to handle most aspects of

---

[24]*Schofield v. Trustees of the Univ. of Penn.*, 919 F. Supp. 821, 829 (E.D. Pa.1996).

[25]Assuming the week is a 40-hour work week.

this case, including the trial "alone or with the help of an associate."[26]  Additionally, at trial, Plaintiffs' lawyers had the assistance of a jury consultant and information technology consultant.

**Deposition Notice** – Plaintiff's lawyers assert that it took 30 minutes to amend a deposition notice.  Yet the amendment involved only correcting the title of the document.

**30(b)(6) Deposition** – According to Plaintiff's lawyers, it took 5 hours to draft a 30(b)(6) deposition notice that was only 2 pages long.

**Document Requests** – Plaintiff's lawyers claim they spent over 7 hours drafting the Second Set of Interrogatories and Request for Production of Documents.  The document consisted of one interrogatory and four document requests.

**Fee Agreement** – Plaintiff's lawyers request 4 hours related to work on a fee agreement between their firms.

**Witness Estimates** – According to Plaintiff's lawyers, it took three lawyers 10.2 hours to draft a witness list and time estimates.

**Discovery Requests** – Plaintiff's lawyers spent 16 hours drafting the First Set of Interrogatories and Request for Production of Documents.

**Fee Petition** – Plaintiff's lawyers spent nearly 40 hours drafting the fee petition.  However, courts consistently have found that this to be excessive.[27]  Furthermore, the lack of detail and documents in the petition (as discussed below) belies a claim of 40 hours.

---

[26]*Lanni v. New Jersey*, 259 F.3d 146, 151 (3d Cir. 2001).

[27]See *Blagrave v. Nutrition Management Services Co.*, 2009 WL 440299, at *10 (E.D. Pa. Feb. 20, 2009) (noting "the approximately 83 hours spent by Mr. Norris researching and preparing the motion is patently excessive" and only awarding fees for 12 hours);  *Pretlow v. Cumberland County Rd. of Social Services*, 2005 WL 3500028, at *6 (D. N.J .2005) (finding request for reimbursement for 37.8 hours on motion for attorneys' fees to be "unreasonable and excessive"); *M.L. v. Federal Way Sch. Dist.*, 401 F. Supp. 2d 1158, 1171 (W.D. Wash. 2005) (finding a total of 41.1 hours spent on a motion for fees to be somewhat excessive, even when motion faced substantial opposition).

7

**Julie Moore** – Plaintiff's lawyers claim over 196 hours of work with her "workplace investigation expert." This expert was excluded from testifying at trial.

**Replies and Sur-Replies** – Over 110 hours were spent drafting replies and sur-replies.

**Additional Items** – Defendant points out that Plaintiff also spent 11.2 hours ($4,245) "researching and drafting a motion to compel that was never filed"; 9.7 hours on "tasks that did not advance Plaintiff's case"; and 16.9 hours on general research.[28]

I am convinced beyond peradventure that no savvy client would pay for the number of hours requested by Plaintiff. Many hours were unnecessary or redundant. Furthermore, numerous requests were for work on unsuccessful issues. Finally, lawyers bill at higher rates, presumably, because they are more experienced, which means it takes them less time to perform tasks. That is not what happened in this case.

Again, the above is just a sample. Rather than going through each entry and reducing the hours, an across-the-board reduction of 50% is appropriate. This results in a fee of $395,215.

B.     **Expert /Consultant Fees**

Plaintiff's lawyer request reimbursement of $162,165 in "consultant fees."[29] Under 42 U.S.C. § 2000e-5(k), a "court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs . . . ."[30] "The phrase 'as part of the costs' means that the attorney's fee may be imposed 'as an additional component of the traditional costs taxed by the court pursuant to 28 U.S.C. § 1920.'"[31] However, the party

---

[28] Doc. Nos. 200, 212.

[29] Doc. No. 209.

[30] 42 U.S.C. § 2000e-5(k).

[31] *Yarnall v. Philadelphia Sch. Dist.*, 203 F. Supp. 3d 558, 568 (E.D. Pa. 2016) (quoting *EEOC v. U.S. Steel Corp.*, 877 F. Supp. 2d 278, 286 (W.D. Pa. 2012)).

requesting reimbursement must provide adequate documentation to allow a court to determine whether the costs were reasonable and necessary to the litigation.[32]

### 1.  John Petrancosta

Mr. Petrancosta was Plaintiff's economic damages expert and necessary in the case. In support of reimbursement for Mr. Petrancosta's costs, Plaintiff provided his curriculum vitae and eighteen pages of itemized billing. I note that the bills do not distinguish between Mr. Petrancosta's hourly rates and his employees', but Defendant did not object to this request for reimbursement. Accordingly, Plaintiff is entitled to the full amount requested – $36,297.00.

### 2.  Brett Creasy

Brett Creasey, Plaintiff's IT expert, testified regarding Plaintiff's position that she did not send an email from her computer. To support reimbursement of Mr. Creasy's costs, Plaintiff summarily states that his "rates and services are reasonable."[33] She asserts that "Mr. Creasy's bill, which is attached as Exhibit N, outlines the rates and services provided by him . . . ."[34] It does no such thing. The attached "bill" is, apparently, a "transaction listing" of payments from Plaintiff's lawyers to Mr. Creasy's company. The "bill" does not have an hourly rate or any reference to the work preformed or how long the work took. Although I believe that Mr. Creasy's work was necessary to Plaintiff's case, there is no way to tell whether the final costs

---

[32]*E.E.O.C. v. Peoplemark, Inc.*, 732 F.3d 584, 594–95 (6th Cir. 2013) ("[T]he party seeking fees must document the expert fees incurred and the work done. The statute requires that the expert fees be reasonable, and if the moving party did not present the court with adequate documentation, there would be no basis for the court to decide whether the fee was reasonable.").

[33]Doc. Nos. 194, 209.

[34]Doc. No. 209-14.

were reasonable.[35]  Accordingly, the request is reduced by 50% for lack of adequate documentation and Plaintiff is entitled to reimbursement of $15,933.[36]

### 3. Julie Moore

Julie Moore, a lawyer, was retained by Plaintiff as a expert on workplace investigations. Ms. Moore's itemized bill properly lists the number of hours she spent working on the case (154.8), provides her hourly rate ($400), and describes the work done and hours billed on specific dates.[37]  However, she was excluded from testifying at trial, because Judge Bissoon found that Ms. Moore's proposed testimony would not assist the jury; did not require an expert; and suggested a higher standard than required by law.[38]

In light of Ms. Moore being excluded from testifying, Plaintiff now asserts that she was a "consulting expert" who was invaluable to Plaintiff's lawyers' presentation to the jury, and the fact that she was not permitted to testify should not be considered.[39]  Although some cases might require a consulting expert because of some highly-specialized topic, this is not the case.  This is a straightforward case where Plaintiff alleges that Defendant discriminated against her and conducted a poor investigation to cover up its sex discrimination.  If Judge Bissoon thought Ms. Moore should be excluded because her opinion would not assist the jury, I find it hard to believe

---

[35]The documentation as to expert fees must be sufficient "to provide the Court with a factual basis to evaluate the nature of the work done, the quantity and quality of the work, the reasonableness of the rates charges, the necessity for the work, and the nature of its contribution to the plaintiff's case." *Steiner v. Hercules Inc.*, 835 F. Supp. 771, 794 (D. Del. 1993).

[36]I assume Defendant has no objection to this amount, since it argued that if costs for Mr. Creasy were going to be awarded, the award should be no more than $24,276.

[37]Doc. No. 204-17.

[38]Doc. No. 88.

[39]Doc. Nos. 194, 209.

that she was essential to Plaintiff's lawyers' understanding of the case. Additionally, the request is excessive, considering Plaintiff's lawyers' purported experience in employment law cases. Certainly, Plaintiff's lawyers may hire a workplace investigation consultant to assist them, but it is at their own expense.

### 4. Ann Greeley, Ph.D.

Plaintiff seeks $24,276 for her jury and trial consultant. The cases Plaintiff cited justifying reimbursement of costs for a jury consultant all refer to the complex or complicated nature of the case. Again, this case was neither – Defendant allegedly fired Plaintiff because of her sex. Plaintiff's position that the case was complex because it was difficult to untangle Defendant's subterfuge is unrelated to her alleged need for a jury consultant.

Even if I were inclined to have Plaintiff reimbursed for this expense, the request is high. For example, the jury was seated the afternoon of October 1, 2018, and opening statements began the next morning. However, Ms. Greeley attended trial and billed hours on October 1, 2, and 3. So even if I were inclined to have Defendant reimburse Plaintiff for her jury consultant, it would be reduced by at least $9,000.[40] Finally, I'm not convinced that the rate of $425 an hour is reasonable for a jury consultant, and Plaintiff's lawyers failed to provide documentation that it is.

Again, Plaintiff is entitled to have a jury consultant,[41] but not at Defendant's expense.[42]

---

[40] This amount is the sum of $4,250 for both October 2 and 3, as well as reduced lodging.

[41] Many years ago I attended a seminar in Illinois on jury selection consultants. A noted trial lawyer (later to served on the Illinois Supreme Court), said "I don't need an expert to tell me that Swanson is going to try to help Johansson."

[42] *Squires ex rel. Squires v. Breckenridge Outdoor Educ. Ctr.*, No. 10-CV-00309-CBS-BNB, 2013 WL 1231557, at *11 (D. Colo. Mar. 27, 2013) ("While Defendant certainly had the right to retain the services of a jury consultant, I will not require the Squires family to reimburse BOEC for that prophylactic decision.").

### 5. Richard Katz

Richard Katz was Plaintiff's trial technology consultant who helped in "developing trial exhibits and performing technical support services during trial, including the management and display of all electronic trial exhibits and deposition clips."[43] Plaintiff seeks reimbursement of $24,466 for his work. It appears to me that this could have been handled by an in-house IT person, at a much lower rate. I don't recall the exhibits or presentations in this case being overly complicated. Also, I noticed that Mr. Katz is from Charleston, West Virginia and billed $1,200 for travel. Are there no trial technology consultants in Pittsburgh? Be that as it may, Defendant does not object to an award of $12,233 for Mr. Katz, so that amount will be awarded.

### C. Costs

Plaintiff requests reimbursement for the following costs:

| | |
|---|---|
| Depositions | $24,446 |
| Mediation | $2,325 |
| Computer Legal Research | $7,162 |
| Outside Copying | $1,537 |
| Inside Copying | $3,739 |
| Postage and Delivery | $376 |
| Travel | $6,611 |
| Meals | $2,107 |

Lawyers are required to "adequately document costs in order for them to be recoverable."[44] "Parties prevailing in federal court may recover the taxable costs referenced in Fed. R. Civ. P. 54(d)(1) and enumerated in 28 U.S.C. § 1920. Additionally, prevailing parties in

---

[43]Doc. Nos. 194, 208.

[44]*Blagrave v. Nutrition Mgmt. Servs. Co.*, No. CIV.A. 05-6790, 2009 WL 440299, at *8 (E.D. Pa. Feb. 20, 2009); *Marthers v. Gonzales*, No. 05-CV-03778, 2008 WL 3539961, at *6 (E.D. Pa. Aug. 13, 2008) ("[P]laintiffs have not provided any specific dates of the trips, receipts or other documentation for the mileage request, nor have plaintiffs provided an adequate explanation for the actual costs incurred. Without further explanation, the court is unable to determine whether the requested amount is reasonable.").

civil rights cases are generally entitled to recover any reasonable costs associated with litigating their claims, provided that the costs are necessary and properly documented."[45] "Compensation [of costs] is appropriate if the incurred costs are not unreasonable, unnecessary, or inadequately documented."[46] The problem in this case is that every requested costs is inadequately documented, which prevents me from determining whether they are reasonable or necessary.

In support of her request for $48,303 in costs, Plaintiff summarily states that they were "reasonable and were in fact necessary expenditures . . . ."[47] Following this statement, Plaintiff provides a paragraph citing other cases and specific cost reimbursement that were permitted. There is no discussion of the costs in this case. Plaintiff's lawyer's affidavit is equally void of substance related to the costs in this case – he simply reproduces the list above. If there are any itemized explanations, receipts, or invoices to support the cost request, I've been unable to find them, and Plaintiff did not cite them in her brief.

Plaintiff's lawyers argues that providing receipts "is simply not the practice in this district," and "self-generated documents" are enough.[48] As long as this particular district judge sits in this district by designation, it is not the practice in this district. I have serious reservations about this, but assuming it to be true, Plaintiff's lawyers' "self-generated documents" – the list above with nothing more – fails to meet this low standard (*i.e.*, a "self-generated document" which includes only a conclusory statement that costs were reasonable and necessary, and then lists the costs without explanation, does not chin the pole.).

---

[45]*Borrell v. Bloomsburg Univ.*, 207 F. Supp. 3d 454, 523 (M.D. Pa. 2016) (internal citations and quotations omitted).

[46]*Becker v. ARCO Chem. Co.*, 15 F. Supp. 2d 621, 635 (E.D. Pa. 1998).

[47]Doc. No. 209.

[48]*Id.*

      **1.**      **Depositions**

While reimbursement of deposition costs may be permitted, there is <u>no</u> documentation regarding the depositions. Although Plaintiff's lawyers allege that they deposed twelve Defense witnesses, I do not know the who, what, when, or where regarding the depositions. There is nothing in the record informing me what services the stenographer provided or the final cost. Without adequate documentation, I am unable to tell whether the depositions and costs were reasonable or necessary, so the request is denied.

      **2.**      **Mediation**

Plaintiff's lawyers want to be reimbursed $2,325 for mediation. However, they have provided no explanation or documentation to support this request.

      **3.**      **Computer Legal Research**

Plaintiff's lawyers seek reimbursement of $7,162 for computer legal research. I have found no Third Circuit case awarding costs for computer legal research ("CLR"), and Plaintiff has provided none. It appears that "if the prevailing party demonstrates that separately billing for CLR is the 'prevailing practice in a given community' and that such fees are reasonable, the district court may award those costs."[49] However, her lawyers do not assert that the prevailing practice in the community is to charge separately for online research, rather than consider it as part of a lawyer's overhead and include it in the hourly rate. Furthermore, the submitted billing statements do not included separate, itemization or charges for online research.[50] Finally, even if it is the prevailing practice, Plaintiff's lawyers have provided no documentation to support the request for $7,161 in computer legal research. Accordingly this request is denied.

---

[49] *Hernandez v. Bridgestone Ams. Tire Operations*, LLC, 831 F.3d 940, 950 (8th Cir. 2016) (quoting *Missouri v. Jenkins*, 491 U.S. 274, 287 (1989)).

[50] Doc. No. 194-1.

**4.	Copying**

Plaintiff's lawyers request $1,537 for "outside copying" and $3,379 for "inside copying." Although copying costs are recoverable, there is no documentation to support the request. I have no idea how many pages were copied or at what rate per page. I note that the Third Circuit's local rules provide that copies are $0.10 per page,[51] but I cannot apply this to Plaintiff's case because I have no idea – not even a rough estimate – of how many copies were produced and no basis for determining whether they were necessary for the litigation.[52]

Moreover, given that we live in an increasingly electronic world, the request of nearly $5,000 in copying seems high. Though it may not be, I have no documentation to support the request and am unwilling to guess at a final number.

**5.	Postage/Delivery**

Plaintiff's lawyers seek reimbursement of $376 for postage/delivery. Although these items, typically, may be taxable to Defendant, the lack of supporting documents necessitates the exclusion of this cost.

---

[51]Third Circuit L.A.R. 39.3(c).

[52]*Moffitt v. Tunkhannock Area Sch. Dist.*, No. CV 3:13-1519, 2017 WL 319154, at *16 (M.D. Pa. Jan. 20, 2017) ("The cost submitted for copying, however, is not well documented. Other than a blanket fee for 'Copying' the plaintiff did not provide any other supporting information to verify the amount requested. Without this supporting information, the court will not reimburse the requested amount.").

### 6. Travel

Plaintiff's lawyers request $6,611 for "travel," but nothing in the record indicates who traveled where, why they traveled, or how long it took. By simply asserting "Travel $6,611," without documentation or explanation, Plaintiff's lawyers have failed to meet their burden.

### 7. Meals

Plaintiff's lawyers seek $2,107 for meals. The word "meals" appears five times in the submission: twice in reference to the total of $2,107, twice in case citations, and once in an expert's billing document, where it references eight days of "Per Diem (meals, parking, etc.)" at $75 a day, followed by "No Charge." Again without documentation or explanation, this cost will not be reimbursed – assuming reimbursement of "meals" is even permitted, and I am dubious.[53]

### C. Summary of Costs

The lack of supporting documents or even thorough explanations of incurred costs is confusing, considering that Plaintiff's lawyers claim to have have spent over 40 hours drafting the fee petitions. In fact, Defendant pointed out this deficiency in its first response to the request for attorneys' fees and costs. Plaintiff's lawyers were given a second request to properly support their request for reimbursement of costs and have failed to do so. Accordingly, all costs are denied.

---

[53] *Becker v. ARCO Chem. Co.*, 15 F. Supp. 2d 621, 637 (E.D. Pa. 1998) ("Because counsel have not submitted supporting receipts, these charges will be excluded as undocumented. In addition, even assuming the meal expenses were documented, the Court expresses reservations as to whether it is proper to charge the defendant for lunch and dinner costs, which are incurred during a trial by counsel from the local area.").

## CONCLUSION

Based on the findings of fact and conclusions of law above, Plaintiff's Amended Motion for Attorneys' Fees and Costs (Doc. No. 208) is GRANTED IN PART and DENIED IN PART. Plaintiff is entitled to the following reimbursements from Defendant:

| | |
|---|---|
| Attorneys' Fees: | $395,215.00 |
| Expert / Consultant Fees: | $64,463.00[54] |
| Costs: | $0.00 |
| Total: | $459,678.00 |

IT IS SO ORDERED this 4th day of June, 2019.

Billy Roy Wilson<br>
UNITED STATES DISTRICT JUDGE

---

[54]$36,297.00 for John Petrancosta; $15,933 for Brett Creasy; $0 for Julie Moore and Ann Greeley; and $12,233 for Richard Katz.